896 P.2d 357

STATE of Idaho, Plaintiff–Respondent,

v.

Scott RICHARDS, Defendant–Appellant.

No. 20548.

Court of Appeals of Idaho.

June 1, 1995.

Dee, MacGregor & Fales, Grangeville, for appellant. Daren W. Fales argued.

Larry EchoHawk, Atty. Gen. and Michael A. Henderson, Deputy Atty. Gen., argued, Boise, for respondent.

LANSING, Judge.

This is an appeal from a judgment of conviction following a guilty plea for violation of Idaho's telephone harassment statute, I.C. § 18–6710. The appellant contends that the statute under which he was convicted is unconstitutionally overbroad and vague. He also contends that the prosecutor violated the plea agreement by making a sentencing recommendation and that the sentence imposed

is unduly harsh. We conclude that I.C. § 18–6710 is not unconstitutional, that the plea agreement was not dishonored by the prosecution and that the sentence imposed was not unreasonable. Therefore, we affirm the conviction and sentence.

The facts as revealed in the appellate record are sketchy. It appears, however, that sometime in late 1991 Scott Richards began telephoning children in the Grangeville area and discussing AIDS (acquired immune deficiency syndrome), the means of its transmission, the use of condoms, and other matters of a sexual nature. Richards apparently made at least six such calls. In some instances Richards may have told the children he was a doctor, and may have represented that the childrens' parents had given him permission to talk to them.

Richards was charged with and pleaded guilty to one misdemeanor count of using a telephone with intent to annoy, terrify, threaten, intimidate, harass or offend by making requests or suggestions which were obscene, lewd, lascivious or indecent, I.C. § 18–6710. The magistrate imposed a sentence of six months' confinement and a fine of $100. Richards appealed his conviction and sentence to the district court. That court affirmed the conviction but remanded the case due to irregularities at the sentencing hearing. On remand to the magistrate division, Richards filed, *inter alia*, a motion to withdraw his guilty plea on grounds that the statute under which he was convicted was unconstitutional. The magistrate denied Richards' motion and again sentenced him, this time imposing one year of incarceration and a $300 fine. Richards again appealed to the district court, asserting error in the denial of his motion to withdraw his plea and the imposition of a more severe sentence. The district court upheld the magistrate's ruling on Richard's motion, but vacated the sentence, reinstating the original sentence.[1]

Richards now appeals to this Court, asserting that the magistrate erred in denying his motion to withdraw his guilty plea. He argues that I.C. § 18–6710 is unconstitutionally overbroad and vague upon its face, and therefore void. In addition, he contends that the prosecutor breached the plea agreement by making a sentencing recommendation and that the sentence imposed constitutes an abuse of the sentencing court's discretion.

## I. CONSTITUTIONALITY OF I.C. § 18–6710

### A. OVERBREADTH

Richards first argues that he should have been permitted to withdraw his guilty plea because the statute under which he was charged restrains freedom of speech and is therefore unconstitutional for overbreadth. The State acknowledges that the constitutionality of a statute under which a defendant was charged is an issue that can be raised by a motion for withdrawal of a guilty plea pursuant to I.C.R. 12(b)(2) and 33(c).

Where the issues presented involve the constitutionality of a statute, we review the magistrate's determination *de novo*. *Sun Valley Company v. City of Sun Valley*, 109 Idaho 424, 428, 708 P.2d 147, 151 (1985). There is a strong presumption that legislative enactments are constitutional, *Olsen v. J.A. Freeman Company*, 117 Idaho 706, 791 P.2d 1285 (1990), and appellate courts are obligated to seek an interpretation of a statute that upholds its constitutionality. *State v. Newman*, 108 Idaho 5, 13 n. 12, 696 P.2d 856, 864 n. 12 (1985).

Richards does not contend that the specific telephone call for which he was prosecuted constituted speech protected by the First Amendment. Rather, he makes a "facial challenge" to the statute, contending that the statute is overbroad because it impermissibly proscribes a substantial amount of constitutionally protected conduct and is therefore incapable of any constitutional application. *See generally, Broadrick v. Oklahoma*, 413 U.S. 601, 609–13, 93 S.Ct. 2908, 2914–16, 37 L.Ed.2d 830 (1973); *State v. Goodrick*, 102 Idaho 811, 812, 641 P.2d 998, 999 (1982).

1. The district court determined that by imposing a greater sentence after the successful appeal, the magistrate created an appearance of retaliatory sentencing. The district court, therefore, amended the sentence to reflect a sentence no greater than that previously imposed. The State has not cross-appealed from the reduction of the sentence by the district court.

■ Facial attacks for overbreadth are not favored in the law and are allowed only in limited circumstances. *Broadrick,* 413 U.S. at 613, 93 S.Ct. at 2916; *Goodrick,* 102 Idaho at 812, 641 P.2d at 999. If a statute can be constitutionally applied to the defendant's individual conduct, the defendant normally will not be heard to complain that the statute violates the constitutional rights of third persons who do not stand accused. *Broadrick,* 413 U.S. at 610, 93 S.Ct. at 2915; *Goodrick,* 102 Idaho at 812, 641 P.2d at 999. Such challenges are allowed, however, where the statute in question might impermissibly infringe upon speech or conduct protected by the First Amendment. *Id.* As explained by the United States Supreme Court:

> In those cases, an individual whose own speech or expressive conduct may validly be prohibited or sanctioned is permitted to challenge a statute on its face because it also threatens others not before the court—those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid.

*Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 503, 105 S.Ct. 2794, 2801–02, 86 L.Ed.2d 394 (1985).

In the instant case, Richards alleges that Section 18–6710 infringes upon First Amendment rights, and the State does not question Richards' standing to assert facial invalidity. Therefore, we will consider Richards' claim that the statute is facially overbroad.

The challenged statute, I.C. § 18–6710, provides:

> Every person who, with the intent to annoy, terrify, threaten, intimidate, harass or offend, telephones another and (a) addresses to or about such person any obscene, lewd or profane language, or makes any request, suggestion or proposal which is obscene, lewd, lascivious or indecent; or (b) addresses to such other person any threat to inflict injury or physical harm to the person or property of the person addressed or any member of his family, or any other person; or (c) by repeated anonymous or identified telephone calls whether or not conversation ensues, disturbs the peace or attempts to disturb the peace, quiet, or right of privacy of any person at the place where the telephone call or calls are received, is guilty of a misdemeanor and upon conviction thereof, shall be sentenced to term not to exceed one (1) year in the county jail. . . .

Richards contends that the statute plainly penalizes constitutionally protected speech, is therefore void, and cannot be enforced against him.

■ The overbreadth doctrine is aimed at statutes which, though designed to prohibit legitimately regulated conduct, include within their prohibitions constitutionally protected freedoms. *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); *Schwartzmiller v. Gardner,* 752 F.2d 1341, 1346 (9th Cir.1984). Where a facial overbreadth challenge is presented, our inquiry is to "determine whether the enactment reaches a *substantial* amount of constitutionally protected conduct." *Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982) (emphasis added); *State v. Bitt,* 118 Idaho 584, 588, 798 P.2d 43, 47 (1990); *Newman,* 108 Idaho at 11, 696 P.2d at 862. "If the overbreadth is 'substantial,' the law may not be enforced against anyone, including the party before the court, until it is narrowed to reach only unprotected activity, whether by legislative action or by judicial construction or partial invalidation." *Brockett,* 472 U.S. at 503–04, 105 S.Ct. at 2802. *See also Secretary of State of Maryland v. J.H. Munson Co.,* 467 U.S. 947, 964–65, 104 S.Ct. 2839, 2850–52, 81 L.Ed.2d 786 (1984). Overbreadth is not substantial if, "despite some possibly impermissible application, the 'remainder of the statute . . . covers a whole range of easily identifiable and constitutionally proscribable . . . conduct. . . .'" *Id., quoting United States Civil Service Commission v. Letter Carriers,* 413 U.S. 548, 580–81, 93 S.Ct. 2880, 2897–98, 37 L.Ed.2d 796 (1973). The test may be otherwise stated as whether the statute is unconstitutional in a substantial portion of the cases to which it applies. *Regan v. Time, Inc.,* 468 U.S. 641, 650, 104 S.Ct. 3262, 3267–68, 82 L.Ed.2d 487 (1984).

The strength of an overbreadth challenge diminishes where the statutory proscription is directed at behavior other than pure speech:

> [F]acial overbreadth adjudication is an exception to our traditional rules of practice and ... its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from "pure speech" toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe.

*Broadrick*, 413 U.S. at 615, 93 S.Ct. at 2917–18.

■■■ Under the foregoing standards, Richards' overbreadth argument fails. Section 18–6710 does not prohibit the mere expression of ideas or information. Telephone calls made with a legitimate intent to communicate are not criminalized. Rather, the statute prohibits only telephone contacts made with a specific and exclusive intent to "annoy, terrify, threaten, intimidate, harass or offend." Thus, speech is infringed only when it is accompanied by a particular purpose to inflict mental discomfort on another. We conclude that use of a telephone transmission solely to inflict injury by destroying the mental tranquility of the listener is not protected speech, but conduct that legitimately may be proscribed by the State. We concur with the reasoning stated by the Fourth Circuit Court of Appeals, in *Thorne v. Bailey*, 846 F.2d 241 (4th Cir.1988):

> We agree ... that W.Va.Code § 61–8–16(a)(4) prohibits conduct and not protected speech. The government has a strong and legitimate interest in preventing the harassment of individuals. The telephone, a device used primarily for communication, presents to some people a unique instrument through which to harass and abuse others. Because the telephone is normally used for communication does not preclude its use in a harassing course of conduct. As the West Virginia court stated:
>
> > Prohibiting harassment is not prohibiting speech, because harassment is not a protected speech. Harassment is not communication, although it may take the form of speech. The statute prohibits only telephone calls made with the intent to harass. Phone calls made with the intent to communicate are not prohibited. Harassment, in this case, thus is not protected merely because it is accomplished using a telephone.
>
> 333 S.E.2d at 819.

*Id.* at 243, *quoting State v. Thorne*, 175 W.Va. 452, 333 S.E.2d 817, 819 (1985). *See also U.S. v. Lampley*, 573 F.2d 783, 787 (3d Cir.1978).

By requiring that the sole intent of the call be to annoy, terrify, threaten, intimidate, harass or offend, the statute places outside of its ambit calls which, though they may insult or offend the recipient, carry a legitimate purpose such as conveying a complaint about a business practice or government policy or attempting to persuade the hearer to a particular social, religious or political point of view. Consequently, we see little risk that the statute will have a chilling effect on the bona fide exercise of free speech.

■■■ Even if the conduct prohibited by the statute could be characterized as including constitutionally protected speech, we think the act constitutes a permissible regulation to prevent unwarranted intrusion on the privacy of an unwilling hearer. In *Rowan v. United States Post Office*, 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970), the United States Supreme Court addressed the right of mail order companies and direct mail advertisers to send unsolicited materials to persons who had asked that their names be removed from the mailing lists. The Court noted that the use of the mails as an adjunct of free speech was imperative. However, the Court concluded that the right of an individu-

al to preclude intrusion upon the privacy of the home outweighed the free speech right:

> We therefore categorically reject the argument that a vendor has a right under the Constitution or otherwise to send unwanted material into the home of another. If this prohibition operates to impede the flow of even valid ideas, the answer is that no one has a right to press even "good" ideas on an unwilling recipient. That we are often "captives" outside the sanctuary of the home and subject to objectionable speech and other sound does not mean we must be captives everywhere. *See Public Utilities Comm'n v. Pollak*, 343 U.S. 451, 96 L.Ed. 1068, 72 S.Ct. 813 (1952). The asserted right of a mailer, we repeat, stops at the outer boundary of every person's domain.

*Id.* at 738, 90 S.Ct. at 1491. *See also FCC v. Pacifica Foundation*, 438 U.S. 726, 748, 98 S.Ct. 3026, 3039–40, 57 L.Ed.2d 1073 (1978) ("Patently offensive, indecent material presented over the airwaves confronts the citizen, not only in public, but also in the privacy of the home, where the individual's right to be left alone plainly outweighs the First Amendment rights of an intruder."); *Cohen v. California*, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971) ("The ability of government, consonant with the Constitution, to shut off discourse solely to protect others from hearing it is ... dependent upon a showing that substantial privacy interests are being invaded in an essentially intolerable manner."). The acts prohibited by I.C. § 18–6710 are much less deserving of protection than the mailings considered in *Rowan* because the Idaho law applies only where the "communication" is made with a particular illegitimate purpose. Any chilling effect this statute might have is minimal when balanced against the privacy rights of the unwilling recipient.

If, in the far reaches of imagination, it is possible to conceive of applications of I.C. § 18–6710 that would impermissibly infringe upon free speech, such potential does not render the statute substantially overbroad, for it is obvious that the act "covers a whole range of easily identifiable and constitutionally proscribable ... conduct." *Secretary of State of Maryland v. J.H. Munson Co.*, 467 U.S. at 964–65, 104 S.Ct. at 2851. Accordingly, we conclude that I.C. § 18–6710 is not facially overbroad, and that Richards' overbreadth challenge to the statute presented no basis for withdrawal of his guilty plea.[2] We thus join a number of jurisdictions that have upheld similar statutes against overbreadth arguments. *See, e.g., People v. Hernandez*, 231 Cal.App.3d 1376, 283 Cal.Rptr. 81 (2 Dist.1991); *Thorne v. Bailey*, 846 F.2d 241 (4th Cir.1988); *U.S. v. Lampley*, 573 F.2d 783 (3d Cir.1978); *Jones v. Municipality of Anchorage*, 754 P.2d 275 (Alaska Ct.App. 1988); *State v. Thompson*, 237 Kan. 562, 701 P.2d 694 (1985); *State v. Gattis*, 105 N.M. 194, 730 P.2d 497 (1986); *City of Seattle v. Huff*, 111 Wash.2d 923, 767 P.2d 572 (1989).

### B. VAGUENESS

Richards also contends that Section 18–6710 is so vague in describing what conduct is prohibited that it cannot constitutionally be enforced.

 A statute is void for vagueness if "it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute...." *Bitt*, 118 Idaho at 585, 798 P.2d at 44 *quoting United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 811–12, 98 L.Ed. 989 (1954); *Thornhill v. Alabama*, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). The vagueness doctrine is grounded upon the fundamental notion that penal statutes must define criminal offenses with sufficient definiteness to (1) give people a reasonable opportunity to know what is prohibited so that they may act accordingly, and (2), avoid arbitrary and discriminatory enforcement. *Bitt*, 118 Idaho at 585–86, 798 P.2d at 44–45; *Newman*, 108 Idaho at 12, 696 P.2d at 863. "While courts recognize that '[i]n most English words and

---

**2.** Although we reject Richards' facial challenge, in the event that prosecution of constitutionally protected speech is attempted under this statute, the defendant would remain able to challenge the constitutionality of the statute as applied to that defendant's particular conduct. *See Broadrick v. Oklahoma*, 413 U.S. at 615–16, 93 S.Ct. at 2917–18; *State v. Newman*, 108 Idaho at 11 n. 8, 696 P.2d at 862 n. 8.

phrases there lurk uncertainties,' a statute written in terms so ambiguous that persons 'of common intelligence must necessarily guess at its meaning and differ as to its application' is unconstitutionally vague. *Bitt,* 118 Idaho at 585, 798 P.2d at 44 (citations omitted).

■ In *Flipside, Hoffman Estates,* 455 U.S. at 497, 102 S.Ct. at 1192–93, the United States Supreme Court noted that even though a law does not reach constitutionally protected conduct and therefore satisfies overbreadth standards, it may nevertheless be challenged on its face as unduly vague. In order to be successful in the challenge, however, "the complainant must demonstrate that the law is impermissibly vague in all of its applications." *Id.*

■ Possible infirmity for vagueness may be avoided if the statute is given a limiting judicial construction, consistent with the apparent legislative intent and comporting with constitutional limitations. *United States Civil Service Commission v. Letter Carriers,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); *United States v. National Dairy Products Corp.,* 372 U.S. 29, 32, 83 S.Ct. 594, 597–98, 9 L.Ed.2d 561 (1963).

Richards argues that because the words "obscene," "lewd," "lascivious," "indecent," "harass" and "offend" are undefined in the statute, he and others similarly situated are left to speculate as to what conduct is prohibited by the act. We are unpersuaded by this argument. Constitutional standards under the vagueness doctrine do not require that every word used in a criminal statute be statutorily defined.

■ Where the legislature has not provided a definition, terms in a statute are given their commonly understood, everyday meanings. *Ada County Assessor v. Roman Catholic Diocese,* 123 Idaho 425, 849 P.2d 98 (1993). In everyday usage the meaning of obscene includes "abhorrent to morality, . . . stressing or reveling in the lewd or lustful, . . . designed to incite to lust, depravity, indecency." *Webster's Third International Dictionary* at 1557 (1976) (hereinafter "Websters"). By common meaning, "lewd" denotes "vulgar," ". . . inciting sensual desire

or imagination, indecent, obscene, salacious." *Id.* at 1301. Similarly, lascivious carries a common meaning that includes "inclined to lechery; . . . lustful, . . . libidinous." *Id.* at 1274. The definition of "indecent" includes "morally indelicate" or "obscene." *Id.* at 1147. Thus, the words "obscene," "lewd," "lascivious," and "indecent," all connote language with vulgar sexual overtones.

The word "profane" carries a greater variety of possible meanings than do the preceding words. One dictionary definition is "unconcerned with that which is religious, . . . heathen." *Id.* at 1810. However, we do not take that to be the sense in which the word was used by the legislature in I.C. § 18–6710. It has been observed that "like people, words are known by the company they keep." *State v. Kipf,* 234 Neb. 227, 450 N.W.2d 397 (1990). That is, when words appear in a list or are otherwise associated, they should be given related meanings. *Schreiber v. Burlington Northern, Inc.,* 472 U.S. 1, 105 S.Ct. 2458, 86 L.Ed.2d 1 (1985); *Jarecki v. G.D. Searle & Co.,* 367 U.S. 303, 81 S.Ct. 1579, 6 L.Ed.2d 859 (1961); 2A Norman J. Singer, SOUTHERLAND'S STATUTES AND STATUTORY CONSTRUCTION § 47.16 at 183 (5th ed. 1992). Applying this principle, we conclude that the meaning of "profane" intended by the legislature is "characterized by abusive language . . . cursing or vituperation . . ." *Webster's* at 1810. With this narrow construction, drawn from the context in which the word appears, "profane" is not impermissibly vague.

We conclude that each of the words defined above, particularly when viewed in their statutory context requiring that the telephone user harbor a specific intent to cause emotional harm to the listener, are sufficiently narrow and specific to inform persons of reasonable intelligence of the type of sexually explicit, vulgar or vituperative language that is proscribed by Section 18–6710.

■ Richards also complains that the words "harass" and "offend" make the statute ambiguous and that persons therefore cannot understand the intent element of the crime. We do not agree. "Harass" and

"offend" are words commonly employed in ordinary conversation. Use of neither term would leave a person of normal intelligence wondering at the meaning or searching for definition or clarification. These terms, together with their companions "annoy, terrify, threaten, and intimidate," unambiguously describe the specific intent that is an element of the crime defined by Section 18–6710.[3]

Indeed, the specific intent requirement foils Richards' vagueness argument. As the United States Supreme Court has stated:

> The Court, indeed, has recognized that the requirement of a specific intent to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid. The constitutional vice in such a statute is the essential injustice to the accused of placing him on trial for an offense, the nature of which the statute does not define and hence of which it gives no warning. But where the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law.

*Screws v. United States,* 325 U.S. 91, 101–102, 65 S.Ct. 1031, 1035–36, 89 L.Ed. 1495 (1944) (citations omitted). Thus, because those accused of violating Section 18–6710 must be shown to have formulated the specific harmful intent to annoy, terrify, threaten, intimidate, harass or offend in order to be guilty, they cannot be heard to complain that they did not understand the mental element of the crime.

Accordingly, we conclude Richards' argument that I.C. § 18–6710 is facially void for vagueness is without merit and that his motion to withdraw his guilty plea based upon

this contention was properly denied by the magistrate.

## II. BREACH OF PLEA AGREEMENT

Next we address Richards' contention that he should be allowed to withdraw his guilty plea because the prosecutor breached the plea agreement by making a recommendation at sentencing.

█ Both parties agree that a deputy prosecuting attorney and Richards, who at the time was not represented by counsel, agreed that in exchange for a guilty plea the State would make no recommendation to the magistrate as to what sentence should be imposed. At the second sentencing hearing, when invited by the court to comment, the prosecutor stated, "I believe that the Court should certainly impose some—some kind of penalty on Mr. Richards that would certainly attempt to cure him at this point from doing it again … and/or discouraging anyone else that might be thinking about doing it from doing it." Richards' attorney objected to this statement as a breach of the agreement to make no recommendation. The magistrate, however, found that it was not a recommendation but merely a comment upon factors to be considered. Although we find this to be a close question, we agree with the magistrate.

█ An agreement by the prosecutor to refrain from making a sentencing recommendation in exchange for the defendant's guilty plea is a promise which must be kept. *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). A breach of such an agreement, whether intentional or inadvertent, will necessitate resentencing or allowance of withdrawal of the guilty plea. *Id.; State v. Seaman,* 125 Idaho 955, 877 P.2d 926 (Ct.App.1994); *State v. Rutherford,* 107 Idaho 910, 693 P.2d 1112 (Ct.App.1985). We caution the State that a disregard of its

---

3. The specific intent requirement of I.C. § 18–6710 distinguishes it from the ordinance condemned by the United States Supreme Court in *Coates v. Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971), which prohibits persons from assembling on sidewalks and there conducting themselves in a manner "annoying to persons passing by." That ordinance was found to be unconstitutionally vague because it subject-

ed a defendant to an unascertainable standard, predicated not upon the specific conduct or intent of the defendant but upon the subjective reactions of third persons. By contrast, I.C. § 18–6710 requires a deliberate effort by the defendant to "annoy" the victim, and the statute's application is thus not dependent upon the sensibilities or vulnerability of another person.

**40**

obligations under plea agreements will not be tolerated. We conclude, however, that the particular circumstances presented here do not amount to a breach of the plea agreement.

 An agreement to make no sentencing recommendation does not constitute an agreement to stand entirely silent. *See United States v. Miller*, 565 F.2d 1273 (3rd Cir.1977). Unless the State has specifically agreed to the contrary, the prosecutor may legitimately refer to information relevant to the sentencing determination and may permissibly refer to the objectives of sentencing. In this case the prosecutor only vaguely suggested imposition of some "kind of penalty" that would "attempt to cure him" and to deter others. The prosecutor thus touched upon three of our long-recognized objectives of sentencing, retribution, rehabilitation and deterrence. *See State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982), identifying the objectives of sentencing to be the protection of society, deterrence, rehabilitation and retribution. The prosecutor's statement did not suggest any specific form of sentence such as a fine, incarceration, probation, or community service. Recommending in general that a penalty be imposed with some thought toward rehabilitation and deterrence is nothing more than suggesting that the court impose sentence. Therefore, in view of the vagueness of the prosecutor's comments, we conclude that no violation of the plea agreement is demonstrated.

### III. SENTENCING

Finally we address Richards' argument that the sentence imposed represents an abuse of the sentencing court's discretion. Richards was initially sentenced by the magistrate on May 1, 1991. At that hearing the magistrate apparently questioned unidentified persons in the courtroom without asking them to be sworn as witnesses. As a result, the district court on appeal vacated the first sentence and remanded the case for resentencing. Upon remand, the magistrate imposed a sentence that was greater than the original. On a second appeal, the district

court ordered that this sentence be reduced to six months so as not to exceed that initially imposed. Therefore, the sentence that is before us for review is a sentence of six months' incarceration and a $100 fine.

 Our standard when reviewing the imposition of sentence is well known. *State v. Wolfe*, 99 Idaho 382, 582 P.2d 728 (1978). Where a sentence is not illegal, the defendant bears the burden of showing that it is unreasonably harsh in light of the primary objective of sentencing—protecting society—and the related goals of deterrence, rehabilitation or retribution. *State v. Toohill*, 103 Idaho at 568, 650 P.2d at 710.

 At the sentencing hearing the district court expressed concern about the nature of Richards' offense. Although Richards was charged with only one count, for a telephone call to a nine-year-old girl, Richards had similarly victimized numerous other young children. In light of the potentially serious emotional harm to Richards' vulnerable victims, the need to deter Richards from similar or even more severe offenses, and the need to protect society, we conclude that imposition of a sentence of six months' incarceration and a $100 fine is not an abuse of discretion. Therefore the sentence is affirmed.

### IV. CONCLUSION

We find no constitutional infirmity in the statute under which Richards was convicted, nor any breach of the plea agreement by the State. Therefore, Richards' challenges to his conviction fail. We also conclude that the sentence, as reduced by the district court, is not excessive. The judgment of conviction and sentence are therefore affirmed.

WALTERS, C.J., and PERRY, J., concur.