67 P.3d 103

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Daniel L.J. ADAMS, Defendant–Appellant.**

No. 28246.

Court of Appeals of Idaho.

March 24, 2003.

Alan E. Trimming, Ada County Public Defender; Kevin M. Rogers, Deputy Public Defender, Boise, for appellant. Kevin M. Rogers argued.

Hon. Lawrence G. Wasden, Attorney General; Karen A. Hudelson, Deputy Attorney General, Boise, for respondent. Karen A. Hudelson argued.

JUDD, Judge Pro Tem.

Daniel L.J. Adams appeals from an order of the district court, on intermediate appeal from the magistrate division, affirming Adams's judgments of conviction and sentences for one count of telephone harassment and two counts of resisting and obstructing an officer. We affirm.

## I.

### FACTS AND PROCEDURE

In September 2000, a Boise City police officer took photographs of Adams's vehicles. Adams filed a complaint with the police department, alleging that the officer trespassed on private property in order to take the photographs. Adams's complaint was investigated and a letter detailing the results of the investigation was sent to Adams.

On November 2, Adams placed a telephone call to the officer who conducted the investigation of Adams's complaint, seeking more details concerning the investigation and the contents of the letter. Early in the conversation, Adams used profane language. During the conversation, Adams also made several threats toward the officer who took the photographs of Adams's vehicles and the Boise City police department.

Adams was subsequently arrested for telephone harassment. During his arrest, Adams resisted the efforts of the police officers involved to handcuff him and place him in a patrol vehicle to be transported to the county jail. In addition, after being transported to the jail, Adams refused to exit the vehicle or to participate in booking and other jail procedures.

Adams was charged with one count of telephone harassment, I.C. § 18-6710, and two counts of resisting and obstructing an officer, I.C. § 18-705. One count of resisting and obstructing an officer arose out of Adams's conduct during his arrest. The other count resulted from Adams's behavior at the county jail. The City of Boise prosecuted the telephone harassment charge and the resisting and obstructing charge relative to Adams's arrest. The county prosecuted the resisting and obstructing charge which resulted from Adams's conduct at the jail. At the close of the prosecution's evidence at trial, Adams moved to dismiss the telephone harassment charge based on insufficiency of the evidence, which was denied. The jury found Adams guilty of all charges. For telephone harassment, Adams was sentenced to a one-year jail term, with 315 days suspended, and placed on probation for two years. For the resisting and obstructing charge arising from Adams's arrest, Adams was sentenced to a thirty-day jail term, with credit for fifty days already served. Adams was sentenced to a concurrent ten-day jail term, with credit for time served, on the resisting and obstructing charge arising from Adams's behavior while incarcerated. Adams appealed his judgments of conviction and sentences to the district court, which affirmed. Adams again appeals, asserting that: (1) there was insufficient evidence presented at trial to support the jury's finding that he was guilty of telephone harassment; (2) Idaho Code Section 18-6710 is unconstitutionally overbroad as applied to his conduct; (3) the district court erred by not considering his claim that I.C. § 18-6710 is unconstitutionally overbroad as applied; (4) there was insufficient evidence adduced at trial supporting the jury's determination that he was guilty of both counts of resisting and obstructing an officer; (5) the county prosecutor engaged in

misconduct during closing remarks at trial; and (6) his sentences are excessive.

## II.

## STANDARD OF REVIEW

On review of a decision of the district court, rendered in its appellate capacity, we examine the record of the trial court independently of, but with due regard for, the district court's intermediate appellate decision. *State v. Bowman,* 124 Idaho 936, 939, 866 P.2d 193, 196 (Ct.App.1993).

## III.

## ANALYSIS

### A. Telephone Harassment

#### 1. Sufficiency of the Evidence

During the tape-recorded telephone call between Adams and the investigating officer, Adams called the officer an "asshole," used other profane language, and threatened the lives of the officer who took photographs of Adams's vehicles and of any Boise City police officer who might come into contact with him. The tape was played to the jury at trial. After the close of the state's evidence, Adams moved to dismiss the telephone harassment charge. In support of his motion, Adams argued that the state failed to produce evidence proving that Adams had the requisite intent at the time he placed the call to the investigating officer. Rather, Adams argued, it was only after the investigating officer made it clear that he was not going to investigate Adams's complaint further that Adams began making threats. The magistrate concluded that, because I.C. § 18-6710(2) provides that the use of profane language or the making of a threat may be prima facie evidence of intent, the statute requires only that the requisite intent exist at some point during the entire conversation and does not require that the intent exist at the time the call is placed.

On the intermediate appeal, the district court concluded that, contrary to the magistrate's determination, the requisite intent must exist at the time the telephone call is

initiated. The district court noted that the tape recording of Adams's call revealed that Adams called the investigating officer an "asshole" twenty-one seconds into the conversation. The district court determined that the use of such profanity so early in the conversation constituted sufficient evidence that Adams possessed the requisite intent at the time he made the call.

On the present appeal, Adams again argues that the requisite intent under I.C. § 18–6710 must exist at the time a telephone call is placed and that there was insufficient evidence that he had the requisite intent at the time he initiated the call to the investigating officer. Adams contends that more than five minutes elapsed between the start of the conversation and when he began making threats. Adams further asserts that those first five minutes reflect that his purpose in calling the officer was to obtain answers to his questions concerning the investigation of his complaint. Thus, Adams argues, there was insufficient evidence from which the jury could conclude that he possessed the requisite intent at the time he made the call.

Idaho Code Section 18–6710 provides, in relevant part:

> (1) Every person who, with intent to annoy, terrify, threaten, intimidate, harass or offend, telephones another and (a) addresses to or about such person any obscene, lewd or profane language, or makes any request, suggestion or proposal which is obscene, lewd, lascivious or indecent; or (b) addresses to such other person any threat to inflict injury or physical harm to the person or property of the person addressed or any member of his family, or any other person, ... is guilty of a misdemeanor ...

The statute does not define "telephones" nor does it specify at what point the intent must be formed. At oral argument in the present appeal, the state conceded the correctness of the district court's intermediate appellate decision that the requisite intent under the statute must exist at the time a telephone call is initiated. We agree with both the reasoning and conclusion of the district court wherein it stated:

The statute couples the intent element with the predicate, "telephones another." *Id.* The verb "telephone" is susceptible of meanings which could support the argument advanced by each of the parties. It is defined as follows: "(1) to talk over a telephone; convey a message by telephone; (2) to try to make a connection by dialing a telephone number ..." WEBSTER'S NEW WORLD COLLEGE DICTIONARY, THIRD EDITION, p. 1375 (1997). Thus, if the Court were to interpret "telephones another" consistently with the first definition, the State's argument would prevail, and the crime could be committed if the requisite intent existed at any time during the telephone conversation. However, if the Court were to interpret "telephones another" consistently with the alternate definition, Adams's argument would prevail, and the intent element would be satisfied only if the requisite intent existed at the time Adams dialed the Boise Police Department's telephone number.

In resolving this ambiguity, the Court is assisted by the opinion of the Idaho Court of Appeals in *State v. Richards*, 127 Idaho 31, 896 P.2d 357 (Ct.App.1995). In *Richards*, the appellant argued Idaho's telephone harassment statute, Idaho Code § 18–6710, was unconstitutionally vague and overbroad. *Id.* at 34 [896 P.2d at 360]. Holding that the statute was not overbroad, the Court found, "the statute prohibits only telephone contacts made with a *specific* and *exclusive* intent to 'annoy, terrify, threaten, intimidate, harass or offend.' " *Id.* at 36 [896 P.2d at 362] (emphasis added). If, as the Idaho Court of Appeals held, the statute prohibits only telephone contacts made with a specific and exclusive intent to "annoy, terrify, threaten, intimidate, harass or offend," then it does not prohibit communications made by telephone where the communicator initiated the telephone call with a legitimate purpose, but thereafter formed the proscribed intent. Based upon the Court of Appeals' limiting construction, this Court concludes that Idaho's telephone harassment statute is satisfied only where

the requisite intent existed when the defendant "tr[ied] to make a connection by dialing a telephone number," *i.e.*, when the defendant initiated the telephone conversation. This conclusion is consistent with the principle of statutory construction which dictates that "if a criminal statute is ambiguous, the doctrine of lenity applies and the statute must be construed in favor of the accused." *State v. Dewey*, 131 Idaho 846, 848, 965 P.2d 206, 208 (Ct.App.1998).

Appellate review of the sufficiency of the evidence is limited in scope. A judgment of conviction, entered upon a jury verdict, will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera–Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App.1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct.App.1991). We will not substitute our view for that of the jury as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct.App.1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera–Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

In the instant case, the district court held in its intermediate appellate decision that there was sufficient evidence that Adams had the requisite intent at the time he placed the call based on Adams calling the investigating officer an "asshole" twenty-one seconds into the conversation. Our independent review of the record shows that the district court was correct in its conclusion. Pursuant to I.C. § 18–6710(2), the use of obscene or profane language may be prima facie evidence of intent. Before any substantive conversation began, Adams called the investigating officer a profane name. Thereafter, Adams made numerous threats to the lives of Boise City police officers. Based on Adams's use of profane language very early in the conversa-

tion with the investigating officer, we conclude that there was sufficient evidence upon which a reasonable jury could conclude that Adams had the requisite intent at the time he placed the telephone call to the investigating officer.

### 2. Constitutionality of I.C. § 18–6710

Adams next claims that I.C. § 18–6710 is unconstitutionally overbroad as applied to his conduct and that the district court erred by refusing to address his overbreadth challenge on the intermediate appeal. We decline to address the merits of Adams's arguments. There is no indication in the record that Adams raised an overbreadth challenge to I.C. § 18–6710 before the magistrate. In an appeal from a final judgment of a magistrate following an appeal to a district court sitting as an appellate court, this Court reviews the record of the magistrate independently of the decision of the district court. *Bowman*, 124 Idaho at 939, 866 P.2d at 196. Consequently, we will not consider issues that were presented on appeal to the district court unless we would have considered those issues where the initial appeal was to this Court. *State v. Kenner*, 121 Idaho 594, 597, 826 P.2d 1306, 1309 (1992). Issues not raised before the trial court may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Even issues involving the constitution are generally not considered on appeal unless they are properly raised below. *Bowman*, 124 Idaho at 940, 866 P.2d at 197. Because Adams did not raise a constitutional challenge to I.C. § 18–6710 before the magistrate, it was not properly preserved for appellate review. Therefore, we conclude that the district court did not err by refusing to consider Adams's overbreadth challenge on the intermediate appeal and we do not address it on this appeal.

### B. Resisting and Obstructing

Adams next asserts that there was insufficient evidence to support his judgments of conviction for either of the resisting and obstructing charges, which arose from

his behavior during arrest and at the jail. Idaho Code Section 18–705 provides:

> Every person who willfully resists, delays or obstructs any public officer, in the discharge, or attempt to discharge, of any duty of his office or who knowingly gives a false report to any peace officer, when no other punishment is prescribed, is punishable by a fine not exceeding one thousand dollars ($1,000), and imprisonment in the county jail not exceeding one (1) year.

Three elements must be proven to demonstrate a violation of this statute: (1) the person who was resisted, delayed or obstructed was a law enforcement officer; (2) the defendant knew that the person was an officer; and (3) the defendant also knew at the time of the resistance that the officer was attempting to perform some official act or duty. *State v. Hollon,* 136 Idaho 499, 502, 36 P.3d 1287, 1290 (Ct.App.2001).

### 1. Time of arrest

■ With regard to the charge of resisting and obstructing at the time of arrest, Adams asserts that the evidence presented at trial was insufficient to prove that he knew that the men approaching him to effectuate his arrest were police officers. The evidence presented at trial reveals that the police officers involved in Adams's arrest were wearing plain clothes when they approached him. They advised Adams that they were police officers and ordered him to get down. A jacket worn by the primary arresting officer was unzipped and the two police badges that he was wearing were visible. After the officers identified themselves, Adams began moving toward a nearby parking garage, at which time the primary arresting officer informed Adams that he was a police officer and instructed Adams not to move. Adams then fled into the parking garage, and the officer again commanded Adams not to move. The officer chased Adams approximately forty yards before tackling him. At the time Adams was apprehended, he asked the primary arresting officer who he was. The officer responded that he was with the Boise City police department. Adams then asked who the officer was looking for. The officer informed Adams that he was looking for Daniel Lance Adams and explained that he had a warrant for Adams's arrest. Adams then stated that he did not recognize the arrest. The officer directed Adams to put his hands behind his back so that he could be handcuffed, but Adams failed to comply. A second officer had to grab Adams's right arm with both hands and force it behind Adams's back. Adams was brought to a patrol vehicle. However, Adams refused to get in and tightened his body so that the officers could not place him in the vehicle. The primary arresting officer used a pain compliance technique to get Adams into the vehicle. Adams then refused to sit up in order to be seatbelted, and another officer was required to pull Adams up by his jacket into a sitting position.

Adams's wife testified at trial in Adams's defense. She testified that she did not know that the men who approached her and Adams were police officers until she was on the ground being handcuffed. Although Adams's wife's testimony may have conflicted with the evidence presented by the state that the arresting officers identified themselves as police officers, there was substantial evidence supporting a determination that Adams knew that the men he resisted at the time of arrest were police officers.

### 2. Jail conduct

■ With respect to the resisting and obstructing charge at the jail, Adams contends that there was insufficient evidence to prove that any of his behavior at the jail delayed or obstructed the discharge of the jail officers' duties. The record indicates that upon Adams's arrival at the county jail after his arrest, an intake officer asked Adams to exit the patrol vehicle. Adams replied, "Fuck you." The intake officer then asked Adams whether he wanted to come out feet first or head first, and Adams responded in the same manner. The intake officer removed Adams from the vehicle and placed him on the ground. When the intake officer asked Adams if he would like to stand up, Adams again responded, "Fuck you." The intake officer and another officer dragged Adams into the intake area. Once inside the intake area, a booking officer asked Adams if he would submit to the booking process, which

included fingerprinting, taking mug shots and dressing in jail garb. Adams responded by saying, "Fuck you." Thereafter, Adams refused to participate in the booking process.

The next day, a jail officer approached Adams's cell to conduct a standing head count. When the officer asked Adams to stand and state his name, Adams replied, "Fuck you." Thereafter, the officer asked Adams several times to stand and give his name and Adams refused to comply. The officer testified at trial that Adams's refusal to participate in the standing head count delayed him in completing his duty before the jail was secured for the night.

The basis for the resisting and obstructing charge at the jail encompassed Adams's behavior when he arrived at the jail as well as his refusal to participate in the standing head count. Having reviewed the record, we conclude that there was substantial evidence upon which a reasonable jury could conclude that Adams's conduct at the jail delayed and obstructed the jail officers in the discharge of their official duties.

**C. Prosecutorial Misconduct**

 During the jury instructions conference at trial, the magistrate noted that there was evidence presented that Adams had refused to be fingerprinted or photographed after being transported to the jail. The magistrate determined that such evidence could not be used as a basis for the resisting and obstructing charge at the jail because I.C. § 18–705 provided that a person could be charged with only a violation of that statute when no other punishment was prescribed. The magistrate observed that I.C. § 20–601(5) provided punishment when a person refused to complete the booking process and concluded that Adams's refusal to be fingerprinted or photographed fell within the purview of I.C. § 20–601(5). Consequently, the magistrate instructed the jury that Adams's refusal to be fingerprinted and photographed could not be considered evidence on the charge of resisting and obstructing at the jail.

During the county prosecutor's closing argument, she stated:

You heard testimony about the Ada County case, what happened at the jail. [The intake officer] came in, he told you the same thing that [another intake officer] told you, ... that when they took the defendant into the jail, he refused to get out of the car. Resist. He said, "Fuck you." Obstruct.

He refused when they asked him, "Do you want to come out feet first, head first?" "Fuck you."

He refused to stand. They had to drag him across the floor. Resist.

In addition to what happened at the sally port, you heard testimony that he refused to give his name at roll call. He was told why the officers wanted to do it, why they were executing their duties. He knew they were police officers. He was in jail. He refused to do it. Resist.

Now, the judge told you in jury instruction number 17 that you're not allowed to consider the evidence of the fingerprints and the refusal to be photographed, but you don't even need to consider that because with all the refusals, all the resisting that happened at the sally port, with the resisting that happened, with the refusal to stand for roll call, you have more than enough to know beyond a reasonable doubt that he's guilty of resisting and obstructing in this case.

Adams did not object to the prosecutor's comments. On appeal, Adams claims that the prosecutor engaged in misconduct by informing the jury that it could consider the excluded evidence in finding him guilty of resisting and obstructing at the jail.

 Ordinarily, this Court will not address an issue not preserved for appeal by an objection in the trial court. *State v. Roza-jewski*, 130 Idaho 644, 645, 945 P.2d 1390, 1391 (Ct.App.1997). However, where an alleged error is claimed to have deprived the defendant of his or her constitutional right to a fair trial, review is warranted under the doctrine of fundamental error, even though no objection was made at trial. *State v. Reynolds*, 120 Idaho 445, 448, 816 P.2d 1002, 1005 (Ct.App.1991). Our inquiry is, thus, two-tiered. We first determine whether the prosecutorial conduct complained of was im-

proper. *Id.* If we conclude that it was, we then consider whether such misconduct prejudiced the defendant's right to a fair trial or whether it was harmless. *Id.* Where the appellate court is able to declare that, beyond a reasonable doubt, the jury below would have reached the same result had the misconduct not occurred, the error is deemed harmless. *Id.* at 451, 816 P.2d at 1008. Prosecutorial misconduct rises to the level of fundamental error when it is calculated to inflame the minds of jurors and arouse prejudice or passion against the defendant, or is so inflammatory that the jurors may be influenced to determine guilt on factors outside the evidence. *State v. Porter,* 130 Idaho 772, 785, 948 P.2d 127, 140 (1997).

After reviewing the context of the prosecutor's remarks in closing argument, we conclude that no misconduct has been shown. The magistrate instructed the jury that it could not consider evidence of Adams's refusal to be fingerprinted and photographed in deciding whether he was guilty of resisting and obstructing at the jail. The scope of the magistrate's ruling did not include Adams's refusal to get out of the patrol vehicle upon arrival at the jail nor his refusal to stand and walk to the intake area after being removed from the vehicle. Contrary to Adams's argument, the prosecutor did not advise the jury that it could consider the evidence of his refusal to be fingerprinted and photographed.

Adams contends that his refusal to get out of the vehicle and walk to the intake area could be considered part of the booking process and that the prosecutor's reference to that conduct was improper. Although the magistrate indicated at the jury instructions conference that the failure to complete the entire booking process was punishable by another statute and therefore could not serve as a basis for punishment under I.C. § 18–705, the magistrate's instruction to the jury was not worded so broadly as to include the entire booking process. Rather, the magistrate's instruction was limited to the evidence of Adams's refusal to be fingerprinted and photographed, and Adams has not asserted that the magistrate erroneously instructed the jury. Therefore, the prosecutor's reference to Adams's conduct upon arrival at the jail was not improper.

**D. Sentence Review**

Finally, Adams contends that his sentences are excessive. Our appellate standard of review and the factors to be considered when evaluating the reasonableness of a sentence are well established. *State v. Burdett,* 134 Idaho 271, 1 P.3d 299 (Ct.App.2000); *State v. Sanchez,* 115 Idaho 776, 769 P.2d 1148 (Ct.App.1989); *State v. Reinke,* 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982); *State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct.App. 1982). After applying the standards applicable to sentence reviews and reviewing the record in this case, we conclude that Adams's sentences are not unreasonable or excessive.

## IV.

### CONCLUSION

The state has conceded that, in order for Adams to be found guilty of telephone harassment, he must have possessed the requisite intent under I.C. § 18–6710 at the time he initiated the telephone call to the investigating officer. We conclude, as did the district court, that there was substantial evidence upon which a reasonable jury could conclude that Adams had the requisite intent at the time he placed the telephone call to the investigating officer based on Adams's use of profane language very early in the conversation.

Adams failed to assert an overbreadth challenge to I.C. § 18–6710 before the magistrate. Because the issue was not raised in the trial court, it was not properly preserved for appellate review. Therefore, we decline to address the merits of Adams's arguments that I.C. § 18–6710 is unconstitutionally overbroad as applied to his conduct and that the district court erred by refusing to consider his challenge on the intermediate appeal.

Upon review of the record, we conclude that there was substantial, albeit conflicting evidence, that Adams knew that the men he resisted at the time of arrest were police officers. In addition, there was substantial evidence upon which a reasonable jury could conclude that Adams's conduct upon arrival

at the jail and his refusal to participate in standing head count delayed and obstructed the jail officers' attempts to discharge their official duties.

Contrary to Adams's argument, the prosecutor did not advise the jury that it could consider evidence of Adams's refusal to be fingerprinted or photographed in determining whether Adams was guilty of resisting and obstructing at the jail. Therefore, we conclude that Adams has failed to demonstrate prosecutorial misconduct at trial.

Finally, we conclude that Adams has not shown that his sentences are unreasonable or excessive. Therefore, the district court's order affirming Adams's judgments of conviction and sentences for one count of telephone harassment and two counts of resisting and obstructing an officer is affirmed.

Chief Judge LANSING and Judge PERRY concur.