**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 39215**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2012 Unpublished Opinion No. 720** |
| | ) | |
| Plaintiff-Respondent, | ) | **Filed: November 15, 2012** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **CHRISTOPHER BRIGGS,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| Defendant-Appellant. | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Kathryn A. Sticklen, District Judge. Hon. Thomas P. Watkins, Magistrate.

District court's appellate decision affirming magistrate court's judgment of conviction for second degree stalking, affirmed.

Ellsworth, Kallas & DeFranco, PLLC; Joseph L. Ellsworth, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Chief Judge

Christopher Briggs appeals from the district court's decision on intermediate appeal affirming his misdemeanor conviction. For the reasons set forth below, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Briggs was convicted by jury verdict of second degree stalking, in violation of Idaho Code § 18-7906. After dismissing the jury, the magistrate notified the parties that the jury may have been misinstructed, because the definition provided for "course of conduct" did not follow the amended statute. Specifically, the definition did not describe that the challenged conduct must be "repeated acts of nonconsensual contact." Briggs moved for a new trial. Following a hearing, the magistrate denied the motion finding that the instructional error was harmless because all the evidence presented at trial described nonconsensual acts. Therefore, the jury could only convict Briggs based on nonconsensual acts. Briggs appealed the magistrate's

1

decision to the district court and the district court affirmed the judgment of conviction. Briggs appeals.

## II.

## ANALYSIS

Briggs claims that the jury instructions: (1) were improper because the jury was misled as to the elements of the crime; and (2) deprived Briggs of a fair trial because his constitutional rights were not protected. The State contends that Briggs failed to establish fundamental error; therefore, the district court did not err in affirming the conviction. Further, the State alleges that Briggs' constitutional rights claim was never raised below and is not properly before this Court.

On review of a decision of the district court, rendered in its appellate capacity, we review the decision of the district court directly. *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008); *State v. DeWitt*, 145 Idaho 709, 711, 184 P.3d 215, 217 (Ct. App. 2008). We examine the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *Losser*, 145 Idaho at 672, 183 P.3d at 760; *DeWitt*, 145 Idaho at 711, 184 P.3d at 217. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure. *Losser*, 145 Idaho at 672, 183 P.3d at 760; *DeWitt*, 145 Idaho at 711, 184 P.3d at 217.

The question whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Severson*, 147 Idaho 694, 710, 215 P.3d 414, 430 (2009). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman*, 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct. App. 1993). An erroneous instruction will not constitute reversible error unless the instructions as a whole misled the jury or prejudiced a party. *State v. Shackelford*, 150 Idaho 355, 374, 247 P.3d 582, 601 (2010). We presume that the jury followed the court's instructions. *See State v. Kilby*, 130 Idaho 747, 751, 947 P.2d 420, 424 (Ct. App. 1997); *State v. Hudson*, 129 Idaho 478, 481, 927 P.2d 451, 454 (Ct. App. 1996). Briggs failed to object to the instruction below, therefore he asserts the error is fundamental in order to obtain appellate review.

2

Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Idaho decisional law, however, has long allowed appellate courts to consider a claim of error to which no objection was made below if the issue presented rises to the level of fundamental error. *See State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007); *State v. Haggard*, 94 Idaho 249, 251, 486 P.2d 260, 262 (1971). In *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), the Idaho Supreme Court abandoned the definitions it had previously utilized to describe what may constitute fundamental error. The *Perry* Court held that an appellate court should reverse an unobjected-to error when the defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) the error is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) the error affected the outcome of the trial proceedings. *Id.* at 226, 245 P.3d at 978. Because jury instructions that relieve the State of its duty to prove, beyond a reasonable doubt, all the essential elements of a crime violate a defendant's right to due process, jury instructions that omit a contested, essential element of the crime, rise to the level of fundamental error. *State v. Draper*, 151 Idaho 576, 588, 261 P.3d 853, 865 (2011).

## A.     Defining "Course of Conduct"

The first element of a claim of fundamental error is that the error be constitutional. Briggs must show that an error existed in the jury instructions that misled the jury and violated his right to a fair trial. Briggs alleges that the magistrate provided the jury with an outdated definition of "course of conduct." He alleges that this constitutes error because the outdated definition made it possible for the jury to convict him of something "less than repeated acts of nonconsensual conduct." After the presentation of evidence, the court gave the jury the following instruction, which tracks the elements of second degree stalking in accordance with I.C. § 18-7906:

> In order for the defendant to be guilty of Stalking, the state must prove each of the following:
> 1.     On or about April 1st through June 1st, 2009
> 2.     in the state of Idaho
> 3.     the defendant Christopher Briggs
> 4.     knowingly and maliciously engaged in a course of conduct that seriously alarmed, annoyed, or harassed [victim], and was such as would cause a reasonable person substantial emotional distress, OR

3

> 5.     engaged in a course of conduct such as would cause a reasonable person to be in fear of death or physical injury, or in fear of the death or physical injury of a family member.

The magistrate also provided the jury with the following definition:

> "Course of conduct" means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. Course of conduct does not include constitutionally protected activity.

However, the definition given by the court differs with the definition currently provided in I.C. § 18-7906. The corresponding definition provided for by that statute reads:

> "Course of conduct" means repeated acts of nonconsensual contact involving the victim or a family or household member of the victim, provided however, that constitutionally protected activity is not included within the meaning of this definition.

After the jury was excused, the magistrate recognized that the outdated definition was used and entertained a motion for a new trial. In its memorandum and opinion addressing the motion, the magistrate found that the jury was not instructed correctly; nonetheless, the court, assuming the error was fundamental, found that it was harmless. Likewise, Briggs now assumes the error is fundamental and therefore only addresses whether the error was harmless. The State alleges that the error did not mislead the jury as to the elements of the crime or reduce the State's burden of proof. For the following reasons, we agree.

We note that the instruction challenged is not an essential elements instruction, but one that is intended to provide definition to an element, consistent with a statute. However, even assuming the error was of constitutional dimension, we determine that the error was harmless. The omission of "repeated acts of nonconsensual contact" could potentially mislead the jury in two ways. First, the jury could convict Briggs based on a single act, rather than repeated acts. Second, the jury could convict Briggs based on consensual contact, rather than nonconsensual contact. Notwithstanding this potential to mislead the jury, other language in the jury instructions prevented the jury from convicting Briggs based on the foregoing reasons. As to the first point, the omission of "repeated acts" in the definition did not allow the jury to convict Briggs based on one incident. Even though "repeated acts" was not included in the definition, the definition still included the term "pattern of conduct composed of a series of acts." The word "pattern" indicated to the jury the need to find not just one incident of wrong doing, but multiple incidents. Similarly, "series of acts" prohibits the jury from convicting based on one act. In

4

addition, the elements instruction asserted acts over a course of time, April 1 through June 1, 2009. Finally, a "continuity of purpose" implies more than a singular event.

As to the second point, taken as a whole, the jury instructions denote that only nonconsensual acts should be considered to support a conviction. The instructions provided that the required conduct of the defendant needed to cause the victim to be "seriously alarmed, annoyed, or harassed," or "would cause a reasonable person to be in fear of death or physical injury." It is unreasonable to conclude that any victim would consent to conduct that would have the foregoing results. Therefore, such language indicates that the required conduct be nonconsensual. The definition of harassed included conduct that "served no legitimate purpose." The "continuity of purpose" language in the course of conduct instruction given encompasses the improper purpose alleged, stalking. Further, the instructions included a definition describing nonconsensual conduct. The definition described the following seven categories as "nonconsensual" contact: (1) following the victim or maintaining surveillance, including by electronic means on the victim; (2) contacting the victim in a public place or on private property; (3) appearing at the workplace or residence of the victim; (4) entering onto or remaining on property owned, leased, or occupied by the victim; (5) contacting the victim by telephone or causing the victim's telephone to ring repeatedly or continuously regardless of whether a conversation ensues; (6) sending mail or electronic communications to the victim; and (7) placing an object on or delivering an object to property owned, leased, or occupied by the victim. Therefore, taken as a whole, the instructions directed the jury to convict Briggs only if nonconsensual conduct was found.

Even if the jury theoretically could convict Briggs based on consensual contact, the record demonstrates that it was not factually possible for the jury to do so, because only nonconsensual evidence was presented to the jury. The magistrate found that all of Briggs' acts, as alleged by the State, fell into one of the defined categories of nonconsensual acts. These acts included: (1) potential surveillance on the victim by way of cell phone; (2) appearing at the victim's residence and yelling; (3) attempting to contact the victim by telephone; and (4) sending electronic communications to the victim. Further, the record demonstrates that Briggs attempted to contact the victim up to ten times. In addition, he also contacted her friends and brother several times, which the victim described as threatening, including contacting one friend around twenty-five times. Briggs does not argue that such conduct was consensual, but rather argues

5

that he had a reason for the conduct--he was worried about the victim and wanted to know where she was.[1] Despite Briggs' alleged motive for engaging in such acts, the acts nonetheless are nonconsensual. As a result, the jury was presented with only nonconsensual conduct and, therefore, could not have determined the verdict based on consensual conduct. Accordingly, we determine that the outdated definition of "course of conduct" was harmless.

## B.     Defining "Constitutionally Protected Activity"

Briggs alleges, for the first time on appeal, that the failure to instruct the jury on the definition of constitutionally protected activity misled the jury and violated his first amendment constitutional rights. The State claims that this issue was not raised below, including on intermediate appeal, and in the alternative, Briggs has failed to establish fundamental error. In his appeal to the district court, Briggs claimed that: (1) the jury instructions were misleading; (2) I.C. § 18-7906 is unconstitutional on its face; (3) I.C. § 18-7906 is unconstitutional as applied to Briggs; and (4) the verdict was not supported by competent evidence. The district court did not rule on the merits of Briggs' second and third claim, finding that the constitutional challenges were not preserved before the magistrate court.[2] Briggs now, however, claims that the failure to define constitutionally protected activity constitutes fundamental error and, therefore, is appropriately before this Court.

Even if we address this claim, Briggs' assertions fail. First, Briggs must show that the failure to define "constitutionally protected activity" violated his constitutional rights. Briggs alleges that the prosecution presented evidence to the jury of activity that is constitutionally protected. Without a proper definition, Briggs claims the jury could have convicted him based on constitutionally protected activity, thereby violating the United States and Idaho Constitutions. The State asserts that the instruction was not constitutionally required[3] and that

---

[1]     Much of Briggs' complaint regarding the evidence is that it constituted hearsay or lacked foundation or relevance. However, the evidence was admitted at trial without objection and thus, is properly before us in the record.

[2]     The court will not generally consider an issue not raised before the district court sitting in its appellate capacity. *State v. Doe*, 144 Idaho 819, 822, 172 P.3d 1094, 1097 (2007).

[3]     We note again that the claimed omitted instruction is definitional rather than the elements instruction. Further, the instruction given did exclude protected speech, although without further definition which Briggs claims was required.

6

unobjected-to testimony at trial established that Briggs' messages were threatening, and thus were unprotected speech. We agree.

This Court has previously determined that communication with the "intent to annoy, terrify, threaten, intimidate, harass, or offend" is not protected speech. *State v. Richards*, 127 Idaho 31, 36, 896 P.2d 357, 362 (Ct. App. 1995). Here, the jury was provided with instructions to find Briggs guilty of stalking only if he either harassed the victim, or caused her to be in fear of death or physical injury. The court then defined "harassed" as "a knowing and willful course of conduct directed at a specific person which seriously alarmed or annoyed the person, *and which served no legitimate purpose*." (Emphasis added.) Based on the instructions and definitions, the jury was only able to find Briggs guilty if he harassed the victim or threatened harm. Harassment and threats are unprotected speech; therefore the jury was only able to convict based on unprotected speech. Consequently, there was no need for the magistrate to define what constitutes constitutionally protected activity. The jury was already instructed on the necessary requirements for conviction, and those requirements only included unprotected speech activities. Thus, Briggs' constitutional rights were not violated because, by virtue of the instructions and definitions as a whole, the jury could not consider protected speech when determining its verdict. Accordingly, Briggs failed to show that the omission of this definition violated his constitutional rights.

Even if we were to assume that Briggs' constitutional rights were violated, he has still failed to show that the omission of the definition of constitutionally protected activity was not harmless. Briggs alleges that the only evidence of unprotected activity presented at trial was evidence that he appeared at the residence where the victim was staying and yelled at her from the driveway. He asserts that all other evidence presented at trial was either protected speech or hearsay. Specifically, Briggs alleges that evidence regarding: (1) a GPS tracking device; (2) a gun; (3) emails; (4) text messages[4]; (5) a MySpace posting; and (6) phone calls, are all evidence of protected speech. However, Briggs fails to recognize that the evidence he argues is protected speech can become unprotected speech when performed with the intent to harass or threaten. For instance, although there was no evidence indicating that the emails directly threatened the victim,

---

[4] Briggs claims that evidence of various messages constituted hearsay or was otherwise objectionable. However, again, the evidence was not objected to, is properly before us and is not subject to a fundamental error analysis.

the emails can nevertheless become unprotected speech when sent repeatedly with the intent to annoy, alarm, or harass the victim. The victim never responded to the emails and Briggs was aware of her attempt not to communicate with him. Therefore, the jury could infer that Briggs' act of repeatedly emailing the victim was meant to annoy, alarm, or harass her, and thus would be unprotected speech.

Notwithstanding Briggs' assertions, the record demonstrates that Briggs engaged in the following unprotected activities: (1) Briggs sent the victim ten emails, none of which were responded to; (2) Briggs called and sent text messages to the victim's friends threatening to harm them if they did not provide him with the location of the victim. One friend testified to receiving up to twenty-five text messages in one week from Briggs; (3) Briggs sent a message to the victim through her MySpace account; (4) Briggs filed a missing person report; (5) Briggs repeatedly called the residence where the victim was staying; (6) Briggs appeared at the residence and yelled for the victim to come out. Based on the foregoing evidence, we agree that the unprotected activity conducted by Briggs was the basis of his conviction. Irrespective of the jury instructions' failure to define "constitutionally protected activity," we conclude that, on the whole record and beyond a reasonable doubt, the evidence of unprotected speech was the basis of the jury's verdict and could not have been attributable to any erroneous instruction. Therefore, the error, if any, was harmless.

### III.

### CONCLUSION

The magistrate found that the errors in the jury instructions were harmless. The district court affirmed the magistrate's decision. Briggs has failed to demonstrate reversible error. Accordingly, the district court's order, on intermediate appeal, is affirmed.

Judge GUTIERREZ and Judge MELANSON **CONCUR.**