IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 38047

STATE OF IDAHO,              )
                            )       2012 Opinion No. 6
        Plaintiff-Respondent,  )
                            )       Filed: February 6, 2012
v.                          )
                            )       Stephen W. Kenyon, Clerk
CHRISTOPHER HOMER RANDLE,    )
                            )
        Defendant-Appellant.   )
                            )

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County.  Hon. John P. Luster, District Judge.

Judgment of conviction for felony driving under the influence, affirmed.

Sara B. Thomas, State Appellate Public Defender; Shawn F. Wilkerson, Deputy Appellate Public Defender, Boise, for appellant.  Shawn F. Wilkerson argued.

Hon. Lawrence G. Wasden, Attorney General; Nicole L. Schafer, Deputy Attorney General, Boise, for respondent.  Nicole L. Schafer argued.
_____

MELANSON, Judge

Christopher Homer Randle appeals from his judgment of conviction for felony driving while under the influence of alcohol (DUI).  Specifically, Randle challenges the district court's order denying his motion to suppress evidence.  For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

At approximately 11:30 in the evening on January 4, 2010, an officer noticed Randle's vehicle alone in a parking lot with its front-end abutting a grassy knoll.  The officer parked his patrol car approximately two car lengths behind Randle.  The officer left his headlights on and approached the driver's side of Randle's vehicle.  As he approached, the officer noticed that the engine of Randle's vehicle was running.  The officer knocked on Randle's window and Randle opened his door.  When Randle opened his door, the officer noticed two open beer cans located in a cup holder between the passenger and driver seats.  The beer can mouths were pointed in the

1

direction of the driver and the passenger, respectively. In response to the officer's question, the passenger in Randle's vehicle claimed that both beers were hers. The officer then asked Randle for his driver's license. The officer noticed that Randle struggled to get his driver's license out of his wallet and that Randle's eyes were glassy and bloodshot. The officer detected an odor of alcohol on Randle's breath. The officer asked Randle to step out of the vehicle and inquired again about the open beer cans. Randle initially claimed that he had not been drinking and that both beers belonged to his passenger. However, when the officer confronted Randle about the way the mouths of the beer cans were pointed, Randle admitted that one of the beers was his and that he had been drinking that evening. The officer conducted field sobriety tests, which Randle failed.

Randle was charged with felony DUI. I.C. §§ 18-8004, 18-8005(5). Randle filed a motion to suppress, arguing that all of the evidence gathered against him must be suppressed because the officer seized Randle without reasonable suspicion when the officer parked behind Randle's vehicle in the parking lot, left the patrol car's headlights on, approached Randle's vehicle, and knocked on the window. The district court determined that this encounter was consensual and, therefore, Randle was not seized within the meaning of the Fourth Amendment. Accordingly, the district court denied Randle's motion to suppress. Randle then entered an Idaho Criminal Rule 11 conditional guilty plea to felony DUI and reserved the right to appeal the district court's order denying his motion to suppress. Randle appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The Fourth Amendment to the United States Constitution, and its counterpart, Article I, Section 17 of the Idaho Constitution, guarantee the right of every citizen to be free from

unreasonable searches and seizures. However, not all encounters between the police and citizens involve the seizure of a person. *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); *State v. Jordan*, 122 Idaho 771, 772, 839 P.2d 38, 39 (Ct. App. 1992). For example, a seizure does not occur simply because a police officer approaches an individual on the street or other public place and asks if the individual is willing to answer some questions or puts forth questions if the individual is willing to listen. *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Florida v. Royer*, 460 U.S. 491, 497 (1983). Further, even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions and ask to examine identification. *State v. Fry*, 122 Idaho 100, 102, 831 P.2d 942, 944 (Ct. App. 1991). So long as police do not convey a message that compliance with their requests is required, the encounter is deemed consensual and no reasonable suspicion is required. *Id.* Only when an officer, by means of physical force or show of authority, restrains the liberty of a citizen may a court conclude that a seizure has occurred. *Id.* Importantly, the critical inquiry is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he or she was not at liberty to ignore the police presence and go about his or her business. *Bostick*, 501 U.S. at 436.

The United States Supreme Court, in *United States v. Mendenhall*, 446 U.S. 544, 554 (1980), stated:

> Examples of circumstances that might indicate seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

Other circumstances that may indicate a seizure include whether an officer used overhead emergency lights or took action to block a vehicle's exit route. *State v. Willoughby*, 147 Idaho 482, 487-88, 211 P.3d 91, 96-97 (2009); *State v. Schmidt*, 137 Idaho 301, 302-03, 47 P.3d 1271, 1272-73 (Ct. App. 2002); *Fry*, 122 Idaho at 103, 831 P.2d at 945.

## III.

## ANALYSIS

### A.     Seizure Inquiry

Randle acknowledges that, in determining whether a person was seized under the Fourth Amendment, the critical inquiry is whether, taking into account all of the circumstances

3

surrounding the encounter, the police conduct would have communicated to a reasonable person that he or she was not at liberty to ignore the police presence and go about his or her business. *Bostick*, 501 U.S. at 436. However, Randle asserts that *Bostick* identified two separate inquires that logically follow from the critical inquiry and, given the circumstances of his case, the district court applied the wrong inquiry in determining that he was not seized.

In *Bostick*, police boarded a bus and asked passengers for permission to search their luggage. Bostick consented to a search of his luggage and the police found cocaine. In addressing Bostick's argument that he was seized because a reasonable person would not feel free to leave in such circumstances, the Court noted:

> When police attempt to question a person who is walking down the street or through an airport lobby, it makes sense to inquire whether a reasonable person would feel free to continue walking. But when the person is seated on a bus and has no desire to leave, the degree to which a reasonable person would feel that he or she could leave is not an accurate measure of the coercive effect of the encounter.
> . . . .
> . . . In such a situation, the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter.

*Id.* at 435-36.

From this language, Randle asserts that the inquiry regarding whether a reasonable person would feel free to leave is irrelevant when something other than police conduct, like being a passenger on a bus, prevents a person from leaving the physical area where that person is being questioned. Randle argues that, when he was sitting in the driver's seat of his parked vehicle and the officer tapped on his window, Randle had to respond to the officer's implied request for communication by either rolling down his window or opening his door to see what the officer wanted and, therefore, was "trapped" in his vehicle like Bostick was "trapped" on a bus. Accordingly, Randle asserts that the proper inquiry by the district court was whether a reasonable person would feel free to decline the officer's request, not the inquiry of whether a reasonable person would feel free to leave.

We note that Randle's case is readily distinguishable from *Bostick* because Randle was in the driver's seat of his own vehicle, not a passenger on a bus. Additionally, Randle was not "trapped" in his vehicle like Bostick was "trapped" on a bus because there was no evidence that

4

anything other than police conduct, like being a passenger on a bus, prevented Randle from leaving the parking lot. Indeed, the evidence showed that Randle was not prevented from leaving the parking lot. Specifically, at the hearing on Randle's motion to suppress, Randle argued that he "could not pull his vehicle forward. He either had to back up past the police officer and run him over or respond to the officer's request." However, the district court found that Randle could have backed up and driven away from the encounter without running over the officer because the officer was at Randle's driver's side window and the officer's vehicle was two car lengths behind Randle's. As noted above, at a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *Valdez-Molina*, 127 Idaho at 106, 897 P.2d at 997; *Schevers*, 132 Idaho at 789, 979 P.2d at 662. We accept the trial court's findings of fact that are supported by substantial evidence. *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. We conclude that the district court's finding that Randle was not prevented from leaving the parking lot was supported by substantial evidence.

We emphasize that the inquiries regarding whether a reasonable person would feel free to leave or feel free to decline the officer's request are only part of the critical inquiry. Again, the critical inquiry is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he or she was not at liberty to ignore the police presence and go about his or her business. *Bostick*, 501 U.S. at 436. While *Bostick* demonstrates that the facts of each case dictate what questions may be most appropriate when conducting the critical inquiry, *Bostick* does not create separate and distinct inquiries as Randle asserts. Accordingly, Randle's assertion that the proper inquiry by the district court was whether a reasonable person would feel free to decline the officer's request and not whether a reasonable person would feel free to leave, is without merit.

## B.    Application of Seizure Inquiry

We next address Randle's argument that the district court erred by denying his motion to suppress because Randle was seized when the officer parked behind Randle's vehicle, left the patrol car's headlights on, approached Randle's vehicle, and knocked on the window. In determining that Randle was not seized, the district court noted:

> [A] seizure certainly is basically a show of authority that would justify an objective conclusion on the part of a citizen in thinking they are not free to leave, and it's really a question of factual determination for the court.

5

. . . .

. . . And it's well established that every time that law enforcement makes contact with a citizen, it does not necessarily constitute a seizure. And I think that's the very strict, limited issue in front of the Court as to whether or not Mr. Randle had been, in fact, seized as defined under the Fourth Amendment. And, again, that's an objective standard.

. . . .

Law enforcement can certainly come up to a citizen on the street and strike up a casual conversation with that citizen. And while we may have an inclination to believe we cannot keep walking because that's a police officer, in fact, if the situation objectively calls for it, that's exactly what the citizen can do.

The district court also relied heavily on this Court's decision in *Fry*, 122 Idaho 100, 831 P.2d 942 and the Idaho Supreme Court's decision in *State v. Baker*, 141 Idaho 163, 107 P.3d 1214 (2004). In *Fry*, at approximately midnight, police officers observed a vehicle in a parking lot and its two occupants. The officers watched as Fry started his vehicle and attempted, unsuccessfully, to pull out of a parking space. One officer approached the vehicle and tapped on the driver's window while the other officer walked to the vehicle and stood behind it, preventing Fry from driving away. When Fry rolled down his window, the officer asked what he was doing and if he could have Fry's driver's license. This Court determined that Fry was seized because the police conduct in this case would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business. *Fry*, 122 Idaho at 103, 831 P.2d at 945.

In *Baker*, at approximately two in the morning, a police officer observed a white vehicle accelerate as if to get away from the officer. The officer followed the white vehicle and parked behind it after it came to a parking spot in a cul-de-sac. The officer did not activate his emergency lights, but did quickly shine his spotlight into the driver side rear window and rear view mirror prior to exiting his patrol car and position the spotlight toward the back portion of the white vehicle. The officer approached the vehicle and could smell a strong odor of marijuana coming from the driver's side window that was rolled down. The officer asked the driver what was going on and asked for identification. The Court determined that the use of a spotlight to illuminate Baker's vehicle did not constitute a seizure of Baker. *Baker*, 141 Idaho at 167, 107 P.3d at 1218. In reaching this conclusion, the Court noted:

Spotlights have the purpose of illuminating an area, enabling the officer to gain more information about the nature of the vehicle, its occupants, and the circumstances that the officer is confronting. The spotlight can significantly

6

enhance officer safety. We agree with the State that an officer is not constitutionally required to choose between a consensual encounter in the dark or turning on a spotlight and thereby effectuating a detention that may not be supported by reasonable suspicion. A rule that an officer's use of a spotlight creates a per se detention would discourage officers from using such lights when necessary for their safety or the safety of others.

*Id.*

Based upon *Fry* and *Baker*, the district court in this case reasoned:

So when you look at the facts in *Fry* where you have an officer standing positioned to block off any ability to leave or the circumstances in the *Baker* case where there is actually more than just a tap on the window but the bright spotlight late at night in conjunction with the contact at the driver's side by the officer, this situation seems to be certainly less intrusive in the sense that the officer had apparently parked far enough away from Mr. Randle that he had room to leave, should he desire to leave, and had simply tapped on his window to get his attention.

. . . .

So I think the initial contact by the law enforcement officer who parked two car lengths away came to the driver's side of the window, knocked on the window, and Mr. Randle responded in the fashion that he did really is a consensual contact in the Court's estimation and, therefore, is not subject to a Motion to Suppress, and so that motion would be denied.

We first note that, although an officer's action to block a vehicle's exit route may be indicative of a seizure, the officer in this case did not block Randle's exit route. As described above, at the hearing on Randle's motion to suppress, the district court found that Randle could have driven away from the parking lot without running over the officer because the officer was at Randle's driver's side window and the officer's vehicle was parked two car lengths behind Randle's. This finding was supported by substantial evidence. While Randle urges this Court to find that, when the officer left his headlights on, he blocked Randle's exit route because that made it visually difficult for Randle to back up and leave, the record does not support this finding and we will not engage in fact-finding.[1] Additionally, we agree with the district court's

---

[1] Randle urges this Court to rely upon *State v. Jestice*, 861 A.2d 1060 (Vt. 2004) and find that a seizure occurred. In that case, an officer was patrolling in early morning hours and noticed a vehicle in a parking lot with two occupants. The officer pulled his patrol car nose-to-nose to the parked vehicle and left his engine running and headlights on as he approached. The Vermont Supreme Court concluded that the officer exhibited a show of authority inhibiting the defendant from breaking off the encounter because, as the officer testified, he essentially blocked the exit to

analysis related to *Baker* and conclude that the officer's use of his headlights here was even less intrusive than the officer's use of a spotlight in *Baker*, which was not found to constitute a seizure.

This Court has also previously determined that police have the right to approach a parked vehicle and ask the occupants questions, even if no obvious criminal activity is afoot. *See State v. Zubizareta*, 122 Idaho 823, 827, 839 P.2d 1237, 1241 (Ct. App. 1992); *State v. McAfee*, 116 Idaho 1007, 1010, 783 P.2d 874, 877 (Ct. App. 1989). In *Zubizareta*, the defendant was not seized when an officer walked up to the defendant's legally-parked vehicle, tapped on the window, and engaged the defendant in brief conversation after he voluntarily complied with the officer's request to roll down the window. *Zubizareta*, 122 Idaho at 827, 839 P.2d at 1241. This Court concluded that the defendant's "freedom to go about his business was not restricted at this point." *Id.* Similarly, by approaching Randle's vehicle in the parking lot and tapping on the window, the officer did not restrict Randle's liberty to ignore the officer's presence and go about his business. Finally, as far as can be determined from the record, there was no threatening presence of several officers, no display of weapons or physical touching, no tone of voice indicating that compliance with the officer's request might be compelled, and no use of overhead emergency lights.

After this review of the totality of the circumstances surrounding the encounter between Randle and the officer, we conclude that, when the officer parked behind Randle's vehicle, left the patrol car's headlights on, approached Randle's vehicle and knocked on the window, such conduct would not have communicated to a reasonable person that he or she was not at liberty to ignore the officer's presence and go about his or her business. As such, we agree with the

the lot and, further, as both the defendant and his companion testified, they had difficulty seeing because of the bright lights of the patrol car shining in their faces. *Id.* at 1063. We decline to rely on this case as Randle urges largely because *Jestice* is factually distinguishable from Randle's situation. The officer here parked two car lengths behind Randle's vehicle, whereas in *Jestice*, the officer parked nose-to-nose with the defendant's vehicle and admitted to essentially blocking the exit to the lot. Further, the officer here left his headlights on two car lengths behind Randle's vehicle, not shining straight at the faces of the vehicle's occupants as in *Jestice*. Finally, the defendant and his companion in *Jestice* testified that they had difficulty seeing because of the bright lights shining in their faces, whereas here Randle invites us to assume that it is what occurred in this case, which we decline to do.

district court that by such conduct, the officer did not seize Randle within the meaning of the Fourth Amendment.

**C.      Consideration of I.C. § 18-705**

We finally address Randle's argument that the district court erred because it should have considered Randle's potential criminal liability pursuant to I.C. § 18-705 as a factor in determining whether Randle was seized. In support of his argument, Randle cites to *State v. Bishop*, 146 Idaho 804, 203 P.3d 1203 (2009). In that case, an officer received a tip that a man suspected of selling methamphetamine had entered a market. The officer located Bishop in an alley near the market and asked to speak with him about methamphetamine. After the officer noticed that Bishop had dilated pupils, bloodshot eyes and appeared to be nervous, the officer informed Bishop he was going to conduct a frisk for weapons. Bishop responded "no" and the officer told Bishop he would be arrested if he did not comply with the frisk. *Id.* at 809, 203 P.3d at 1208. Bishop initially complied by turning around and placing his hands on the patrol car but, once the officer began the frisk, Bishop turned around and told the officer "no" again. *Id.* The officer arrested Bishop for resisting and obstructing an officer and Bishop began to struggle against being handcuffed. It was only after backup arrived that the officer was able to handcuff Bishop and complete a search, during which he discovered a bag of methamphetamine in Bishop's pocket.

Bishop was charged with possession of drug paraphernalia, resisting an officer, and felony and misdemeanor possession of a controlled substance. Bishop filed a motion to suppress the methamphetamine discovered in his pocket asserting that the officer's frisk was unconstitutional. After the district court denied this motion, this Court concluded the frisk was unconstitutional. *Id.* On review, the Idaho Supreme Court noted that I.C. § 18-705 makes it a crime to willfully resist, delay, or obstruct any public officer in the discharge or attempt to discharge any duty of his or her office. *Bishop*, at 816, 203 P.3d at 1215. Further, the Court explained that three elements must be satisfied to find a violation of the statute: (1) the person who was resisted, delayed, or obstructed was a law enforcement officer; (2) the defendant knew that the person was an officer; and (3) the defendant also knew at the time of the resistance that the officer was attempting to perform some official act or duty. *Id.*; *see also State v. Adams*, 138 Idaho 624, 629, 67 P.3d 103, 108 (Ct. App. 2003). The Court then noted that there was no dispute that the officer was a law enforcement officer and that Bishop was aware of this fact, and

9

the only issue was whether the officer was attempting to perform an official act or duty of his office. *Bishop*, 146 Idaho at 816-17, 203 P.3d at 1215-16. The Court determined that, because the frisk was unlawful, it was not a duty under the statute and, therefore, the man was entitled to peacefully refuse the frisk. *Id.* at 821, 203 P.3d at 1220. Accordingly, the Court held that the evidence obtained during the search incident to Bishop's arrest should have been excluded. *Id.*

Based upon *Bishop*, Randle argues:

> When the officer knocked on Mr. Randle's door, Mr. Randle was forced into a situation where he had to choose between the protection of his privacy interests or risk criminal liability. To avoid criminal liability under I.C. § 18-705, Mr. Randle had to guess whether the officer was acting in-accordance with an official duty, which he couldn't know before rolling down the window. If a court determined at a later time that the officer had reasonable and articulable suspicion that a crime was afoot, and Mr. Randle would have driven away from the officer, then Mr. Randle would have been guilty of resisting or obstructing. . . .
>
> This analysis is relevant to both "the feel free to ignore the officer request" analysis and the "feel free to leave" analysis because Mr. Randle might not have felt free to leave due to the potential criminal liability he could face if a court determined at a later time that the officer was executing an official duty when he knocked on Mr. Randle's window.
>
> . . . .
>
> . . . Even assuming the trial court's factual finding was correct, Mr. Randle would have had to carefully back up his car, with his vision impaired due to the officer's lights. At the same time, Mr. Randle would have had to carefully monitor his driver's side mirror to assure he did not hit the officer. This action could have provoked the officer to take aggressive actions to stop Mr. Randle. If that occurred, Mr. Randle might have been forced to engage in some form of combat with the officer to protect his privacy interests. This is not that farfetched because Mr. Bishop had to engage in physical combat with an officer to protect his privacy rights. From a policy perspective, the district court's ruling encourages people, who want to protect their privacy interest, to make dangerous decisions which could have serious safety repercussions.
>
> . . . Further, that forced choice and potential criminal liability is relevant to both the feel free to leave inquiry and the feel free to ignore the officer request inquiry, because a reasonable person would weigh whether or not they could get arrested if they decided to protect their privacy interests by either ignoring the officer or driving away. From a policy perspective, the district court's ruling encourages dangerous behavior.

Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Randle did not assert below that the district court should consider his potential criminal liability pursuant to I.C. § 18-705 in

10

determining whether he was seized. Therefore, we do not consider it. Even if we were to consider this argument, it would require speculation about what might have happened had Randle actually weighed whether he would incur criminal liability pursuant to I.C. § 18-705 if he resisted the officer because there was no evidence or argument before the district court to show he did so. Instead, Randle testified that he did not think it was appropriate to leave when the officer was trying to get his attention. Thus, the district court did not err by not considering Randle's potential criminal liability pursuant to I.C. § 18-705 in determining that Randle was not seized.

## IV.
## CONCLUSION

The district court did not err by concluding that Randle was not seized when the officer parked behind Randle's vehicle, left the patrol car's headlights on, approached Randle's vehicle, and knocked on the window. Therefore, the district court did not err by denying Randle's motion to suppress evidence. Randle's judgment of conviction for felony DUI is affirmed.

Chief Judge GRATTON and Judge GUTIERREZ, **CONCUR.**