**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 42580**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2016 Unpublished Opinion No. 400** |
| | ) | |
| Plaintiff-Respondent, | ) | **Filed: February 23, 2016** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **SHANE ANTHONY KRALY,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| Defendant-Appellant. | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County. Hon. Barbara A. Buchanan, District Judge.

Order denying motion to suppress, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Eric D. Fredericksen, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

---

GRATTON, Judge

Shane Anthony Kraly appeals from the district court's order denying his motion to suppress. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Officer Inman drove past a parking lot where he noticed a lone vehicle parked perpendicular to the lot's parking stalls. The vehicle was parked near the end of the lot with no lights on. Officer Inman entered the lot and parked his patrol vehicle approximately thirty feet in front and to the left of the vehicle. He had his headlights turned on because it was dark.

Officer Inman exited his patrol vehicle and walked toward the parked vehicle. As he approached, Officer Inman could see the driver's side window of the vehicle was rolled down and there was a male in the driver's seat and female in the passenger's seat. Officer Inman

1

illuminated the interior of the vehicle with his flashlight and noticed the male was "fidgety, unable to [sit] still, constantly moving around, making erratic movements," and "[r]eally jittery." Officer Inman commented that the vehicle was parked in a "weird spot" and asked what they were doing there. The male said they were "spending some alone time together." Officer Inman asked to see their identification, and the male said he did not have identification, but that his name was Robert Kraly.[1] The female produced her driver's license, which identified her as Tiffany Baldwin, and told Officer Inman she thought she had an outstanding warrant for her arrest. When Baldwin spoke, Officer Inman pointed his flashlight at her.

Based on Kraly's behavior, Officer Inman radioed for a canine officer as he walked back to his patrol vehicle. He then contacted dispatch to check Baldwin's outstanding warrant and the name Robert Kraly. The canine officer, Officer Hottman, arrived with a reserve officer, Officer Britton, and dispatch confirmed Baldwin's outstanding warrant but indicated "Robert Kraly was valid and clear." Officer Inman asked dispatch the reason for the outstanding warrant and the bond amount. Meanwhile, officers Hottman and Britton contacted Baldwin on the passenger's side of Kraly's vehicle. Dispatch responded, and Officer Inman exited his patrol vehicle, approached the driver's side of Kraly's vehicle, and asked Officer Britton to arrest Baldwin.

Once Baldwin had stepped out of the passenger's seat, Officer Hottman saw a syringe on the seat and told Officer Inman to have Kraly exit the vehicle. Officer Inman told Kraly to exit the vehicle and questioned him about his behavior while officers Hottman and Britton questioned Baldwin. Officers Hottman and Britton arrested Baldwin and found a scale in her purse during a search incident to the arrest. At that time, Officer Inman detained Kraly in his patrol vehicle, and Officer Hottman deployed his canine, which alerted on the vehicle. The officers then conducted a hand search of the vehicle's interior, finding two methamphetamine pipes, a small amount of methamphetamine, and a digital scale. As a result, Officer Inman arrested Kraly.

The State charged Kraly with possession of a controlled substance, Idaho Code § 37-2732(c)(1). Kraly filed a motion to suppress, asserting he was seized without reasonable suspicion in violation of the Fourth Amendment and seeking to suppress all evidence resulting from the alleged illegal seizure. The district court denied the motion to suppress, and Kraly

---

[1] The appellant, Shane Kraly, gave Officer Inman a false name. Robert Kraly is actually Shane Kraly's brother.

entered a conditional guilty plea, reserving the right to appeal the denial of his motion to suppress. Kraly timely appeals.

## II.

## ANALYSIS

Kraly asserts he was seized without reasonable suspicion in violation of the Fourth Amendment.[2] He seeks to suppress all evidence resulting from the alleged illegal seizure. The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The Fourth Amendment to the United States Constitution, and its counterpart, Article I, Section 17 of the Idaho Constitution, guarantee the right of every citizen to be free from unreasonable searches and seizures. However, not all encounters between the police and citizens involve the seizure of a person. *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); *State v. Jordan*, 122 Idaho 771, 772, 839 P.2d 38, 39 (Ct. App. 1992). The test to determine if an individual is seized for Fourth Amendment purposes is an objective one, evaluating whether under the totality of the circumstances a reasonable person would have believed he was not free to leave. *State v. Henage*, 143 Idaho 655, 658-660, 152 P.3d 16, 19-21 (2007). Only when an officer, by means of physical force or show of authority, restrains the liberty of a citizen may a court conclude that a seizure has occurred. *State v. Fry*, 122 Idaho 100, 102, 831 P.2d 942, 944 (Ct. App. 1991). A seizure does not occur simply because a police officer approaches an individual on the street or other public place, by asking if the individual is willing to answer some questions, or by putting forth questions if the individual is willing to listen. *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Florida v. Royer*, 460 U.S. 491, 497 (1983). Unless and until there is a detention, there is no

---

[2] An investigative detention is permissible if it is based upon specific articulable facts that justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003).

seizure within the meaning of the Fourth Amendment and no constitutional rights have been infringed. *Royer*, 460 U.S. at 498. Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions and ask to examine identification. *Fry*, 122 Idaho at 102, 831 P.2d at 944. So long as police do not convey a message that compliance with their requests is required, the encounter is deemed consensual and no reasonable suspicion is required. *Id.*

The United States Supreme Court, in *United States v. Mendenhall*, 446 U.S. 544, 554, (1980), stated:

> Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

Other circumstances that may indicate a seizure include whether an officer used overhead emergency lights or took action to block a vehicle's exit route. *State v. Willoughby*, 147 Idaho 482, 487-88, 211 P.3d 91, 96-97 (2009); *State v. Schmidt*, 137 Idaho 301, 302-03, 47 P.3d 1271, 1272-73 (Ct. App. 2002); *Fry*, 122 Idaho at 103, 831 P.2d at 945.

Kraly asserts he was seized without reasonable suspicion when Officer Inman parked in front of Kraly's vehicle, shined headlights into Kraly's windshield, asked what Kraly was doing and for identification, and pointed a flashlight at Baldwin. In support of this assertion, Kraly compares this case to *Fry*, 122 Idaho 100, 831 P.2d 942, where we held the officers in that case seized the defendant because they blocked his exit route and asked what he was doing. Further, Kraly asserts Officer Inman's testimony indicates Kraly was seized as soon as Officer Inman saw Kraly's behavior because Officer Inman testified that he would have initiated a traffic stop if Kraly had tried to drive away at that point. Although Kraly acknowledges we must focus on objective facts, not Officer Inman's subjective testimony, Kraly argues Officer Inman likely did not objectively communicate that Kraly was free to leave if Officer Inman did not believe Kraly was free to leave.

The district court found that Officer Inman did not seize Kraly without reasonable suspicion. The court stated:

> Officer Inman's initial contact with Kraly and Baldwin was in a public place; he asked them what they were doing there, and for identification. Further, upon first approaching the parked vehicle, Inman did not "by means of physical force or show of authority" restrain the liberty of either Kraly or Baldwin.

4

Therefore, this Court finds that the initial contact was consensual, and was not a seizure, and thus, no reasonable suspicion was required.

We agree. On facts very similar to those here, this Court held the officer in *State v. Randle*, 152 Idaho 860, 276 P.3d 732 (Ct. App. 2012) did not seize Randle without reasonable suspicion. In that case, an officer noticed a running vehicle in a parking lot after dark. *Id.* at 861, 276 P.3d at 733. The officer parked his patrol vehicle approximately two car lengths in front of Randle's vehicle, left his headlights on, and knocked on Randle's window. *Id.* Randle opened his door, and the officer noticed open beer cans, Randle's bloodshot eyes, and the smell of alcohol on his breath. *Id.* at 862, 276 P.3d at 734. The officer asked for identification, and after further investigation, Randle admitted one of the beer cans was his. *Id.*

Randle argued he "was seized when the officer parked behind Randle's vehicle, left the patrol car's headlights on, approached Randle's vehicle, and knocked on the window." *Id.* at 864, 276 P.3d at 736. This Court noted the officer did not block Randle's exit route and the officer's headlights did not make the encounter more intrusive. *Id.* at 865, 276 P.3d at 737. We further noted "there was no threatening presence of several officers, no display of weapons or physical touching, no tone of voice indicating that compliance with the officer's request might be compelled, and no use of overhead emergency lights." *Id.* at 866, 276 P.3d at 738. We reiterated that police have the "right to approach a parked vehicle and ask the occupants questions, even if no obvious criminal activity is afoot." *Id.* at 865-66, 276 P.3d at 737-38. Accordingly, we held the officer did not seize Randle without reasonable suspicion when the officer parked behind Randle's vehicle, left the patrol vehicle's headlights on, approached Randle's vehicle, and knocked on the window. *Id.* at 866, 276 P.3d at 738.

Similarly, Officer Inman did not seize Kraly without reasonable suspicion when Officer Inman parked in front of Kraly's vehicle, shined headlights into Kraly's windshield, asked what Kraly was doing and for identification, and pointed a flashlight at Baldwin. First, Officer Inman did not block Kraly's exit route. Officer Inman testified that he parked approximately thirty feet in front of Kraly's vehicle and Kraly could exit the parking lot without obstruction. Second, Officer Inman's headlights and flashlight did not make the encounter more intrusive. Our Supreme Court has held the use of lights to illuminate an area can significantly enhance officer safety and does not constitute a seizure of people in the illuminated area. *State v. Baker*, 141 Idaho 163, 167, 107 P.3d 1214, 1218 (2004). Third, Officer Inman lawfully asked Kraly what he was doing and for identification. Even when officers have no basis for suspecting

5

a particular individual, they may generally ask the individual questions and ask to examine identification. *Fry*, 122 Idaho at 102, 831 P.2d at 944.[3] Finally, Officer Inman was the only officer at the scene when he initially made contact and did not display his weapon, make any physical contact, use a tone of voice indicating compliance with his requests might be compelled, or activate his overhead lights. In fact, Officer Inman specifically testified that he had a calm voice when he addressed Kraly and did not draw or display any weapons or activate his overhead lights. Thus, Officer Inman did not seize Kraly without reasonable suspicion.[4] Because Officer Inman did not seize Kraly without reasonable suspicion, Kraly is not entitled to suppression of any evidence resulting from the alleged illegal seizure and the district court correctly denied his motion to suppress.

### III.

### CONCLUSION

Kraly was not seized without reasonable suspicion. The district court's order denying Kraly's motion to suppress is affirmed.

Judge GUTIERREZ and Judge HUSKEY **CONCUR**.

---

[3] Kraly's reliance on *State v. Fry*, 122 Idaho 100, 831 P.2d 942 (Ct. App. 1991) in this case is misplaced. Although the officer in *Fry*, like Officer Inman, asked the defendant what he was doing, a significant fact in *Fry*, which is absent in this case, was that another officer "placed himself directly behind [the defendant's] vehicle, the front end of which was nearly against the wall of a building, making it impossible for [the defendant] to drive away without running over [the officer]." *Id.* at 103, 831 P.2d at 945.

[4] We note that Officer Inman's testimony about when Kraly was seized does not influence our analysis. While Officer Inman may have subjectively believed Kraly was seized when he witnessed Kraly's behavior, he did not objectively manifest that Kraly was not free to leave until Officer Hottman told Officer Inman there was a syringe on the passenger's seat. At that point, Officer Inman certainly had objective, reasonable suspicion to seize Kraly and appropriately detained him. *See State v. Johnson*, 152 Idaho 56, 58, 266 P.3d 1161, 1163 (Ct. App. 2011) (passenger detained after officers arrested driver and officers' search of vehicle produced drugs and paraphernalia).