**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 45867**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: July 10, 2019** |
| Plaintiff-Respondent, | ) |
| | ) **Karel A. Lehrman, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| JACOB ADAM SHAVER, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Boundary County. Hon. Barbara Buchanan, District Judge.

Judgment of conviction for possession of a controlled substance and possession of paraphernalia, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for appellant. Andrea W. Reynolds argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

---

BRAILSFORD, Judge

Jacob Adam Shaver appeals from his judgment of conviction for possession of a controlled substance, Idaho Code § 37-2732(c)(1), and possession of paraphernalia, I.C. § 37-2734A. Late one night, Shaver was parked at a boat launch with his girlfriend (K.K.) when two police officers approached them. At the time, Shaver was thirty years old, and K.K. was seventeen years old. As a result of Shaver's contact with the officers, a search ensued in which methamphetamine and paraphernalia were discovered. Shaver moved to suppress this evidence and asserts the district court erred when it denied his motion. We affirm.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

At 1:10 a.m. on April 23, 2017, Officers Langan and Lopez were on patrol when they observed a Nissan truck parked in a boat launch parking area. No other vehicles were present. The officers pulled into the parking area and parked the patrol vehicle about 20 to 25 feet away from the truck. The patrol vehicle's overhead lights were not activated, but its spotlight, which was pointing toward the truck, was turned on for officer safety. The patrol vehicle did not obstruct the truck from going forward or backward, and there was plenty of room for the truck to exit the parking area.

Both officers approached the truck. Officer Langan made the initial contact with the driver, Shaver. Meanwhile, Officer Lopez approached K.K. on the passenger's side. Both of the truck's occupants appeared to be asleep. Officer Langan testified that "once [he] walked up and made contact with the occupants of the [truck, he] could see [K.K.] appeared to be quite young" and that Shaver was an adult. Officer Langan asked Shaver what he was doing, and Shaver responded that he was with his girlfriend; they were celebrating their anniversary; and they had fallen asleep. Officer Langan testified he had concerns about an adult male and what appeared to be a minor child celebrating a "romantic anniversary."

Officer Langan asked Shaver if he had identification, which Shaver provided. Officer Lopez retrieved K.K.'s identification, glanced at it and then handed it to Officer Langan, who ran the identifications through dispatch to conduct a warrants check and to verify identities. Officer Langan testified that, through this check, he received information that Shaver was thirty years old and K.K. was seventeen. Officer Langan conveyed this information to Officer Lopez.

Officer Lopez testified that, at that point, he asked K.K. to exit the truck and began asking her questions about her relationship with Shaver. K.K. stated she and Shaver had been "together" for approximately two years, and Officer Lopez noticed K.K. became extremely nervous and started shaking. Officer Lopez then asked Shaver if he had sexual intercourse with K.K. Shaver responded he did not feel comfortable answering that question. When Officer Lopez asked Shaver if he had sexual intercourse at the boat launch that night, Shaver responded he had not.

Officer Lopez asked for permission to search the truck for evidence of sexual activity, and Shaver responded, "I give you consent to search my vehicle." During this search, Officer

Lopez located a bag containing several small ziplock baggies, which he believed were consistent with drug use. He also observed a bag on the dashboard directly in front of the driver's steering wheel. The bag was unzipped and contained a water bong or pipe. When Officer Lopez asked Shaver what the item was, Shaver responded Officer Lopez did not have permission to search the bag.

Shaver was charged with possession of methamphetamine with intent to deliver and with possession of paraphernalia. He moved to suppress the drugs and the paraphernalia. The district court denied Shaver's motion, finding that the officers' initial contact was consensual; "once [the officers] learned of the ages of Shaver and [K.K.] during the consensual contact, [they] had reasonable suspicion to detain them further for investigation"; the search of the truck was consensual; and Shaver revoked his consent but only after Officer Lopez had already seen the water bong or pipe in plain view in the unzipped bag.

Shaver pled guilty to reduced charges of possession of methamphetamine and possession of paraphernalia, but he preserved his right to appeal the denial of his motion to suppress. Although Shaver raised numerous issues before the district court, on appeal Shaver asserts only that he was unlawfully seized when Officer Langan retained Shaver's driver's license to run a warrants check.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

Evidence sufficient to establish reasonable suspicion is "less than that necessary to establish probable cause" but requires "more than a mere hunch." *State v. Bishop*, 146 Idaho 804, 811, 203 P.3d 1203, 1210 (2009). Reasonable suspicion "does not require a belief that any *specific* criminal activity is afoot to justify an investigative detention"; instead, "all that is

3

required is a showing of objective and specific articulable facts giving reason to believe that the individual has been or is about to be involved in *some* criminal activity." *State v. Perez-Jungo*, 156 Idaho 609, 615, 329 P.3d 391, 397 (Ct. App. 2014). In addition, innocent acts, when considered together, can be sufficiently suspicious so as to justify an investigative detention. *United States v. Sokolow*, 490 U.S. 1, 9-10 (1989); *State v. Neal*, 159 Idaho 919, 925, 367 P.3d 1231, 1237 (Ct. App. 2016).

## III.

## ANALYSIS

On appeal, Shaver's only challenge focuses on *when* he was seized within the meaning of the Fourth Amendment. Shaver contends he was seized "when Officer Langan retained [Shaver's] driver's license to run a warrants check." In contrast, Shaver characterizes the district court as ruling that he was not seized *until after* Officer Langan completed the warrants check. Specifically, Shaver argues:

> The district court concluded Mr. Shaver was not seized within the meaning of the Fourth Amendment *until after* the warrants check, and the officers had reasonable suspicion of criminal activity at that point. The district court glossed over the critical point in this encounter--the point when Officer Langan retained Mr. Shaver's license to run a warrants check. It was at this point that the encounter transformed from a consensual encounter into a seizure.

(Emphasis added.)

Shaver's argument misconstrues the district court's ruling. The district court did not conclude that Officer Langan seized Shaver only after running a warrants check. Rather, a careful reading of the order demonstrates that the district court's analysis focused on when reasonable suspicion arose and that the district court found reasonable suspicion existed by the time Officer Langan retained Shaver's license to run a warrants check. Implicit in this ruling is that if Officer Langan's retention of Shaver's license were indeed a seizure under the Fourth Amendment, then reasonable suspicion existed for that seizure.

Review of the district court's complete analysis supports this reading of the district court's order. The district court begins its analysis by expressly finding the officers' testimony at the suppression hearing to be credible.[1] Then, the district court analyzes whether the officers'

---

[1] The only exception to this finding of credibility is the district court's finding that there was inconsistent testimony about when the officers returned Shaver's license to him, a factual

4

initial contact with Shaver--namely when the officers initially approached the Nissan and questioned Shaver before obtaining his license--was a seizure or a consensual contact. For purposes of this analysis, the district court relied at length on *State v. Randle*, 152 Idaho 860, 276 P.3d 732 (Ct. App. 2012), a case involving facts of initial contact similar to those in this case, to conclude the officers' initial contact with Shaver was consensual.

In *Randle*, the Idaho Supreme Court concluded "when the officer parked behind Randle's vehicle, left the patrol car's headlights on, approached Randle's vehicle and knocked on the window" the encounter was not a seizure but rather a consensual contact. *Id.* at 866, 276 P.3d at 738. Similar to *Randle*, in this case the officers did not obstruct Shaver's truck from exiting the parking lot, did not activate the patrol vehicle's overhead lights, used the patrol vehicle's spotlight for officer safety, and approached the truck to make contact with Shaver.

As in *Randle*, the district court found the officers' initial contact with Shaver was consensual:

> After reviewing the totality of the circumstances surrounding the initial contact between Shaver and the two officers, the Court finds . . . the officers' conduct would not have communicated to a reasonable person that he was not at liberty to ignore the officers' presence and go about his business. Thus, the initial contact was consensual, no reasonable suspicion was required, and Shaver was not seized within the meaning of the Fourth Amendment.

Shaver does not challenge this finding on appeal. To the contrary, Shaver expressly concedes the officers' initial contact "was consensual at the outset."

Immediately following the district court's finding that the officers' initial contact with Shaver was consensual, the district court found reasonable suspicion developed during that initial, consensual contact: "The Court further finds that once [the officers] learned of the ages of Shaver and [K.K.] *during the consensual contact, the officers had reasonable suspicion* to detain them for further investigation." (Emphasis added.) Shaver criticizes this finding as limited to a single sentence. Nonetheless, the district court clearly articulates that the initial contact was consensual and that reasonable suspicion arose during that consensual contact.

Substantial evidence supports the district court's finding that reasonable suspicion arose during the initial, consensual contact and, thus, existed when Officer Langan retained Shaver's

---

issue the district court noted was not crucial to the resolution of the issues Shaver raised in his motion. Shaver concedes this factual issue is not determinative of his appeal.

license.  Officer Langan clearly testified he believed a crime was being committed *before* retaining Shaver's license:

> Q.    *At the time you requested identification from the driver* what evidence, if any, did you have to believe that a crime was being committed?
> A.    Well, once I walked up and made contact with the occupants of the vehicle, I could see that [K.K. who] was in the vehicle was--appeared to be quite young.
> So, at that point he's an adult, I didn't know how old she was.  I need[ed] to verify that.
> Also, in the City of Bonners Ferry we have a city curfew.  So I need[ed] to verify that she [was] over the age of 18 years old to be out at that point in time.

(Emphasis added.)

Also, during the officers' consensual contact and before retaining Shaver's license, the officers heard Shaver say he was celebrating an "anniversary" with K.K., whom Shaver called his girlfriend.  On direct examination, Officer Langan testified:

> Q.    When you got to the driver's side door, what happened?
> A.    I made contact with the driver, Mr. Shaver.
> Q.    What did you say?
> A.    I basically asked him if everything was okay, what he was doing there.  Mr. Shaver indicated that he was with his girlfriend; they were celebrating their anniversary.

On cross-examination, Officer Langan further testified:

> Q.    Officer, did they say it was a romantic anniversary?
> A.    They said they were celebrating their anniversary.
> . . . .
> Q.    . . . [I]n your capacity as a law enforcement officer, why did that concern you?
> A.    Because there was a minor child celebrating an anniversary with a grown adult man.
> Q.    Is that illegal?
> A.    It would be if they were engaged in intercourse, which *at that point in time I suspected to be the case*.

(Emphasis added.)

This testimony establishes that during Officer Langan's consensual contact with Shaver, Officer Langan (1) saw Shaver was an adult, (2) saw K.K. was quite young and possibly under the age of eighteen, (3) heard Shaver refer to K.K. as his girlfriend, and (4) heard Shaver say he was celebrating an anniversary with K.K.  Upon acquiring this information, Officer Langan had objective articulable facts giving him reason to suspect criminal activity.  *See, e.g.*, *Perez-Jungo*, 156 Idaho at 615, 329 P.3d at 397 (stating standard for determining reasonable suspicion).

6

On appeal, Shaver expressly acknowledges that "once Officer Langan noticed [Shaver's] age and [K.K.'s] age [there was] reasonable suspicion of criminal activity to detain [Shaver]," but Shaver asserts Officer Langan did not notice their ages until after the warrants check. In support of this argument, Shaver points to the district court's statement that "Officer Langan ran both occupants' identification through dispatch to make sure they were clear of warrants and to verify their identities. In doing so, Langan noticed their ages--Shaver was 30 years old and [K.K.] was 17." Shaver couples this statement with the district court's subsequent statement that, "once [the officers] learned of the ages of Shaver and [K.K.] during the consensual contact, the officers had reasonable suspicion to detain them for further investigation." Although these two statements appear in different sections of the district court's order, Shaver construes these separate statements together to assert the district court erroneously ruled Shaver was not seized *until after* Officer Langan completed the warrants check and verified Shaver's and K.K.'s actual ages.[2]

We disagree with Shaver's characterization of the district court's ruling. Shaver's argument pieces together select statements from the district court's order while ignoring the context of those statements. Moreover, Shaver's argument ignores Officer Langan's clear testimony that, during his initial, consensual contact, he saw Shaver was an adult; saw K.K. was "quite young," possibly under the age of eighteen; heard Shaver say that K.K. was Shaver's girlfriend and that they were celebrating an anniversary; and believed at that point in time a crime was being committed--all by the time Officer Langan inquired about Shaver's license. This testimony is undisputed. Although the district court did not specifically quote this portion of Officer Langan's testimony in its written decision, it found Officer Langan's testimony to be credible, with the exception of one inconsistency unrelated to Shaver's appeal. Acceptance of Shaver's argument would necessarily require rejection of Officer Langan's testimony about his perception of objective facts observed during what Shaver concedes was a consensual contact. We decline to disregard Officer Langan's testimony or to substitute our view for its credibility. *See State v. Flowers*, 131 Idaho 205, 207, 953 P.2d 645, 647 (Ct. App. 1998).

---

[2]     The former statement appears in the "Statement of Facts" of the district court's order, while the latter appears in an analysis section entitled "the defendant was not unlawfully seized." That Shaver's argument hinges on linking these two separate statements together, while not clear from his briefing, was evident at oral argument.

Further, we reject Shaver's assertion that Officer Langan could not have perceived that Shaver was an adult and that K.K. was possibly a minor child without first knowing their actual ages. Shaver points to Officer Langan's testimony on redirect about his concern after receiving Shaver's and K.K.'s actual ages from dispatch:

> Q. Did you have concerns *after* you received information as to the ages of the occupants.
> A. Yes, sir.

(Emphasis added.) Contrary to Shaver's assertion, however, this brief exchange does not mean Officer Langan only had concerns *after* receiving Shaver's and K.K.'s actual ages from dispatch. As discussed above, Officer Langan also testified he believed during his initial contact that there was criminal activity afoot. That Officer Langan had concerns about criminal activity both before and after running a warrants check is not inconsistent. The district court did not find any inconsistency on this issue, and we decline to weigh the evidence to conclude Shaver only had concerns of criminal activity after running a warrants check.

Finally, we disagree with Shaver's criticism of the district court for its reliance on *Randle*, 152 Idaho 860, 276 P.3d 732. Shaver asserts *Randle* is inapposite because it does not address the issue he raises, i.e., whether the retention of his license was an unlawful seizure. That the district court relied exclusively on *Randle*, however, is further indication the district court's analysis focuses solely on the officer's initial, consensual contact before Officer Langan retained Shaver's license. As in *Randle*, this consensual contact only involved the officers stopping their patrol car and approaching Shaver's parked truck; it did not also encompass Officer Langan's retaining Shaver's license. The very fact that *Randle* did not address whether retaining a license is a seizure under the Fourth Amendment supports the conclusion that the district court's use of the term "initial contact" was limited to the type of "initial contact" when officers approach a parked vehicle as discussed in *Randle*. Thus, the district court's exclusive reliance on *Randle* actually refutes Shaver's contention that the district court ruled Shaver was not seized until after Officer Langan completed the warrants check.

Substantial evidence supports the district court's conclusion that reasonable suspicion arose during the officers' initial, consensual contact when Officer Langan approached and questioned Shaver and before Officer Langan retained Shaver's license. As a result, Officer Langan's retention of Shaver's license was not unlawful even if it were a seizure within the meaning of the Fourth Amendment.

8

## IV.

## CONCLUSION

The officers had reasonable, articulable suspicion that Shaver was involved in criminal activity before retaining his license to conduct a warrants check. Accordingly, Shaver was not unlawfully seized, and the district court did not err in denying his motion to suppress. We affirm that denial.

Judge HUSKEY and Judge LORELLO **CONCUR**.