IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 47829

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: May 6, 2021** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| KARL ADRIAN BEST, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Richard S. Christensen, District Judge.

Judgment of conviction for possession of a controlled substance, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Jacob L. Westerfield, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Chief Judge

Karl Adrian Best appeals from his judgment of conviction for possession of a controlled substance. Best alleges the district court erred in its partial denial of his motion to suppress because he was subjected to an unreasonable seizure prior to the drug dog's positive alert on his car. Because Best was not seized prior to the positive alert, the district court did not err and the judgment of conviction is affirmed.

I.

FACTUAL AND PROCEDURAL BACKGROUND

While on patrol shortly after midnight, Officer Mauri observed a white car drive past his patrol car and park on a street in a residential neighborhood. Officer Mauri parked his patrol car at least 100 feet away where he continued to observe the car. Officer Mauri watched the driver exit the car, wander around its driver's side, and walk away from it. Officer Mauri found this

1

behavior to be suspicious. Without activating his overhead lights or siren, Officer Mauri drove closer and radioed dispatch to report that he was investigating a suspicious car at that location. Officer Mauri parked approximately twenty-five feet behind the car and approached on foot.

Using a flashlight, Officer Mauri looked in the car's windows and observed a small butane torch, which he knew from training and experience is sometimes used to ingest illegal drugs. Around this time, the driver of the car, Best, approached and asked Officer Mauri what he was doing. Officer Mauri and Best engaged in conversation a few feet apart. Officer Mauri asked Best if the car was his, but before Best could answer Officer Mauri noticed an item on Best's hip and told Best not to reach for it.

Around this time, Officer Knisley, a canine officer, arrived and Officer Mauri asked her to conduct a drug-dog sniff of the exterior of Best's car. Best protested, telling the officers that they did not have his permission to execute a drug-dog sniff. Officer Mauri's responses were "ok, well, you can explain that in court." "Is that your vehicle?" "Whose vehicle is that?" Best began to walk away from the scene. While Best was walking away, Officer Mauri continued to ask questions, such as, what Best was doing in the area and where he lived. Best stopped briefly and answered Officer Mauri's questions.

When Best began to walk away again, Officer Mauri asked "ok, where are you going now?" Best responded that it was none of Officer Mauri's business. Best told Officer Mauri to "have a good day" and continued to walk away. At approximately this moment, the drug dog gave a positive alert on Best's car. Officer Mauri told Best that he was no longer free to leave. When Best resisted and tried to walk away, Officer Mauri placed Best in handcuffs.

During a subsequent search of the car, the officers found a digital scale with a white, powdery residue, two baggies containing a white crystalline substance, and used syringes. Officer Mauri placed Best under arrest and conducted a search of his person. During this search, Officer Mauri found a syringe plunger and asked Best if he was a Type A or a Type B diabetic, believing a diabetic would know these were made up categories, while someone who used the plunger to ingest drugs may not. Best replied that he was a Type B diabetic. Officer Mauri proceeded to read Best his rights, pursuant to *Miranda v. Arizona*, 384 U.S. 486 (1966), and question Best about what the officers found in his car. Best responded to the questions and acknowledged that the officers would find methamphetamine in his car.

2

The State charged Best with possession of a controlled substance and possession of drug paraphernalia. Best filed a motion to suppress, arguing that Officer Mauri: (1) unlawfully seized Best without reasonable suspicion prior to the drug-dog alert on his car; and (2) failed to administer the *Miranda* warnings prior to his custodial interrogation. The district court held a hearing on the motion, during which Officer Mauri and Officer Knisley testified. At the close of the hearing, the district court orally found that the contact between Officer Mauri and Best was consensual until the drug dog alerted on Best's car. The district court also found that Best's statements after he was handcuffed, but prior to the time *Miranda* warnings were issued, including Best's response that he was a Type B diabetic, should be suppressed as Best's statements were made during a custodial interrogation. However, the district court found that Best's statements made after he was given *Miranda* warnings were consensual.[1] Accordingly, the district court partially denied Best's motion to suppress.

Subsequently, pursuant to a plea agreement, Best entered a conditional guilty plea to possession of a controlled substance, reserving the right to appeal the district court's ruling on his motion to suppress and the State dismissed the possession of drug paraphernalia charge. The district court sentenced Best to a unified sentence of four years, with two years determinate, suspended the sentence, and placed Best on probation. Best timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

---

[1] Best does not challenge the district court's rulings regarding any of his statements.

3

# III.

## ANALYSIS

Best does not challenge the district court's factual findings, only the district court's legal conclusion that Best was not seized prior to the drug dog's positive alert. As such, the only issue on appeal is whether the contact between Best and Officer Mauri prior to the positive drug-dog alert was consensual or whether Best had been seized. Best alleges the district court erred in finding that he was not seized prior to the drug dog alert. Best argues that a reasonable person would not have felt free to leave the encounter given Officer Mauri's presence as a uniformed officer, use of a flashlight, close proximity to Best, command to not reach for the item on Best's hip, statement that Best could explain his concerns about the use of a drug dog in court, and continuous questions when Best attempted to walk away from the scene. In response, the State contends that the district court did not err because Best was not seized prior to the drug dog's positive alert on his car as evidenced by the lack of any display of authority or use of force restricting Best's movement and the freedom with which Best moved around.

The Fourth Amendment to the United States Constitution, and its counterpart, Article I, Section 17 of the Idaho Constitution, guarantee the right of every citizen to be free from unreasonable searches and seizures. However, not all encounters between the police and citizens involve the seizure of a person. *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); *State v. Jordan*, 122 Idaho 771, 772, 839 P.2d 38, 39 (Ct. App. 1992). Only when an officer, by means of physical force or show of authority, restrains the liberty of a citizen may a court conclude that a seizure has occurred. *State v. Fry*, 122 Idaho 100, 102, 831 P.2d 942, 944 (Ct. App. 1991). A seizure does not occur simply because a police officer approaches an individual on the street or other public place, by asking if the individual is willing to answer some questions, or by putting forth questions if the individual is willing to listen. *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Florida v. Royer*, 460 U.S. 491, 497 (1983). Unless and until there is a detention, there is no seizure within the meaning of the Fourth Amendment and no constitutional rights have been infringed. *Royer*, 460 U.S. at 498. Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions and ask to examine identification. *Fry*, 122 Idaho at 102, 831 P.2d at 944. So long as police do not convey a message that compliance with their requests is required, the encounter is deemed consensual and no reasonable suspicion is required. *Id.*

4

"When a defendant seeks to suppress evidence that is alleged to have been obtained as a result of an illegal seizure, the defendant bears the burden of proving that a seizure occurred." *State v. Willoughby*, 147 Idaho 482, 486, 211 P.3d 91, 95 (2009). The critical inquiry when determining whether an individual was seized is whether a reasonable person, accounting for all the surrounding circumstances, would have felt free to disregard the police, decline the officer's request, or otherwise terminate the encounter. *State v. Linenberger*, 151 Idaho 680, 684, 263 P.3d 145, 149 (Ct. App. 2011); *see also State v. Randle*, 152 Idaho 860, 864, 276 P.3d 732, 736 (Ct. App. 2012) (stating that "the critical inquiry is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he or she was not at liberty to ignore the police presence and go about his or her business"). When conducting this inquiry, a seizure may have occurred if an officer used overhead lights or sirens, displayed a weapon, touched the individual, blocked the individual's exit route, or used language or a tone of voice that indicated the officer was compelling the individual's compliance with his requests. *State v. Pieper*, 163 Idaho 732, 734, 418 P.3d 1241, 1243 (Ct. App. 2018). Similarly, a seizure may have occurred if the threatening presence of several officers would indicate to a reasonable person that he is not free to leave. *Id.*

However, an officer is permitted to take actions to aid the officer's safety, without automatically transforming a consensual encounter into a seizure if, given the totality of the circumstances, a reasonable person would still feel free to end the encounter. For example, an officer may use a flashlight to illuminate an area, even by shining the light into a car occupied by individuals, without making an encounter a seizure. *Id.* at 735, 418 P.3d at 1244; *see Randle*, 152 Idaho at 865, 276 P.3d at 737 (noting that "an officer is not constitutionally required to choose between a consensual encounter in the dark or turning on a spotlight and thereby effectuating a detention that may not be supported by reasonable suspicion"). Similarly, in certain situations, an officer may make requests of individuals without the request constituting a seizure. *See State v. Wolfe*, 160 Idaho 653, 656, 377 P.3d 1116, 1119 (Ct. App. 2016) (holding officer's request for an individual to wait in his car because of safety concerns for the officer did not transform the encounter into seizure under totality of circumstances); *see also State v. Zubizareta*, 122 Idaho 823, 828, 839 P.2d 1237, 1242 (Ct. App. 1992) (concluding that officer asking defendant to turn off car's motor did not constitute a seizure because it justifiably enhanced officer's safety while minimally intruding on defendant's freedom of movement).

5

Here, given the totality of the circumstances, prior to the drug-dog's alert on Best's car, not only would a reasonable person in Best's position have felt free to end the encounter with Officer Mauri, but Best, himself, felt free to end the encounter and walk away. Without activating his overhead lights or sirens, Officer Mauri parked at least 100 feet away from Best's car and observed Best get out of his car, wander around it, and then walk away. Thereafter, without activating his overhead lights or sirens, Officer Mauri drove closer, parked his car twenty-five feet away, and approached the unoccupied car on foot. Officer Mauri was investigating when Best approached Officer Mauri at which time Officer Mauri asked Best "is this your vehicle?" Best's behavior indicated that, at least at first, he desired to be involved in a conversation with Officer Mauri.

During the ensuing ninety seconds, Officer Mauri asked Best general questions and permitted him to walk away from the area on multiple occasions. Although Officer Mauri used a flashlight during the encounter and told Best to not reach for the item on his hip, a reasonable person would have understood these circumstances related to Officer Mauri's safety concerns as it was dark outside, Officer Mauri was the only officer at the scene at the time, and Best approached with an unknown item on his hip. A reasonable person would have felt free to disengage from the encounter, as Best did. Further, Officer Mauri's statement that Best could explain his concerns with the use of the drug dog "in court" conveyed simply that if the drug dog alerted and the officers found drugs in the car, Best could raise his concerns related to the use of the drug dog in court. Officer Mauri did not couple this statement with an action or statement that suggested that Best was not free to leave the scene at that point. The video footage from Officer Mauri's body camera shows that Best felt free to end the encounter and walk away as evidenced by the fact that he did so several times. Finally, that Officer Mauri asked questions when Best began to walk away did not indicate that Best was seized because it is appropriate for an officer to ask questions of an individual during a consensual encounter, even if no obvious criminal activity is taking place. *See Randle*, 152 Idaho at 865-66, 276 P.3d at 737-38.

Taking into account all of the surrounding circumstances, there was no indication that Officer Mauri conveyed to Best that he was not free to end the encounter. Officer Mauri did not display weapons, physically touch Best, block any exit routes, explicitly or implicitly command Best to stay at the scene, or use language or a tone of voice to indicate that Best was to comply with any perceived demands. Best walked away from the scene multiple times, thereby

6

undermining any argument that he did not feel free to end the encounter. Because Best was not seized until after the drug dog alerted on his car and Officer Mauri told Best that he was no longer free to leave, and Best does not challenge any of the district court's other findings of fact or conclusions of law, Best has failed to show the district court erred in partially denying Best's motion to suppress.

## IV.

## CONCLUSION

Best was not seized prior to the drug dog's positive alert on Best's car. Accordingly, the district court did not err in partially denying Best's motion to suppress and the judgment of conviction is affirmed.

Judge GRATTON and Judge LORELLO **CONCUR**.